IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

PERFECTION FENCE CORPORATION,

        Plaintiff,

v.

FIBER COMPOSITES, LLC,

        Defendant.

CIVIL ACTION NO. 04-12094 GAO

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS
MOTION FOR A PRELIMINARY INJUNCTION**

Michael A. Albert, BBO # 558566
malbert@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210
(617) 646.8000 Phone
(617) 646.8646 FAX

ATTORNEY FOR PLAINTIFF,
PERFECTION FENCE  CORPORATION

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ........................................................................................ 2

II.     FACTUAL BACKGROUND........................................................................ 2

    A.      Plaintiff And Its PERFECTION and PERFECTION FENCE Marks ........ 2

    B.      Defendant And Its Confusingly Similar Marks ......................................... 4

III.    ARGUMENT .............................................................................................. 10

    A.      The Preliminary Injunction Standard...................................................... 10

    B.      Plaintiff Is Likely To Succeed On The Merits Of Its Trademark Claim. . 11

        1.      PERFECTION and PERFECTION FENCE Are Plaintiff's
            Federally Registered Trademarks .................................................. 11

        2.      Defendant's Infringing Trademarks Are Likely To Cause
            Confusion............................................................................................ 12

            Factor 1 – Similarity of the Marks................................................ 12

            Factor 2 – Similarity of the Goods................................................ 17

            Factors 3, 4 and 5 – Channels of Trade, Advertising and
            Purchasers .................................................................................. 17

            Factor 6 – Evidence of Actual Confusion..................................... 18

            Factor 7 – Defendant's Intent in Adopting Its Mark.................... 20

            Factor 8 – Strength of the Plaintiff's Mark.................................. 22

    C.      Absent An Injunction, Plaintiff Will Suffer Irreparable Harm. ............... 24

        1.      Irreparable Harm is Presumed. ..................................................... 24

        2.      Plaintiff's Lost Sales Are Difficult to Quantify............................ 25

        3.      Fiber's Inferior Product Will Damage Perfection's Reputation. .. 25

    D.      An Injunction Will Impose Minimal Harm On Defendant. ...................... 26

    E.      The Public Interest Favors An Injunction To Prevent Confusion............ 27

IV.     CONCLUSION.......................................................................................... 28

## I.    INTRODUCTION

Perfection Fence, Inc. ("Perfection") respectfully requests this Court enter a preliminary injunction again Fiber Composites, LLC ("Fiber") to cease its infringement of Perfection's trademarks PERFECTION® and PERFECTION FENCE® ("the Marks"). Defendant's use of the identical mark PERFECTION and confusingly similar mark PROFECTION on the same sorts of goods as those sold by Plaintiff has already created actual confusion in the marketplace.  Irreparable harm is presumed in trademark cases, and indeed if Fiber's infringing activities are not enjoined now, Perfection's image, reputation, market position and ability to control its trademarks and standards will be jeopardized, and the resulting damage will be irreparable.

As discussed below, each of the four preliminary injunction factors – likelihood of success on the merits, irreparable harm, balance of hardships and public interest – weighs heavily in favor of an injunction.

## II.    FACTUAL BACKGROUND

### A.    Plaintiff And Its PERFECTION and PERFECTION FENCE Marks

Perfection is a family business, run by the Skulsky family.  (Skulsky Decl. ¶ 3). The Skulsky family has been in business since 1955.  Id.  Their business consists of fencing, decking, and other related goods.  Id.  Perfection adopted the trademarks PERFECTION® and PERFECTION FENCE® in 1993 when it incorporated as Perfection Fence Corporation.  (Skulsky Decl. ¶ 4).  Since first using the Marks in commerce in 1993, Perfection has built up a reputation as the industry leader and is well known by its Marks.  (Skulsky Decl. ¶ 5).

In February 2001, Perfection filed for federal trademark registrations on the mark PERFECTION FENCE®, both in block letter form and as a stylized mark which includes

a circle with a ribbon around the P.  (Skulsky Decl. ¶ 6, Exs. A, B).  The registrations for both applications issued on May 14, 2002 on the principal register of the United States Patent and Trademark Office as Nos. 2,569,755 and 2,569,756.  Id.  The goods and services covered by the PERFECTION FENCE registrations include "non-metal, wood or plastic fencing, namely, guard rails, boards, posts, gates, fence sections, hardware for fencing, namely, screws and fasteners."  Id.

On July 10, 2002, Perfection filed for a federal trademark registration on the mark PERFECTION® in block letter form.  (Skulsky Decl. ¶ 7, Ex. C).  The registration for PERFECTION® issued on March 23, 2004 on the principal register of the United States Patent and Trademark Office as No. 2,826,042.  Id.  The goods and services listed in the federal trademark registration for PERFECTION® include: "Non-metallic outdoor building materials, namely, fence railings, deck railings, gazebo railings, fencing, pillar posts, decks, deck rails, gazebos lamp posts, mail box posts, sign frames and trellises, namely, arbors and pergolas."  Id.

All three trademark registrations are valid and subsisting to this day.  As indicated in the registrations, Perfection's first use in commerce of the Marks as September 1993. (Skulsky Decl. ¶¶ 6-7, Exs. A, B).

In addition to its federal trademark registrations, Perfection has acquired common law trademark rights in the marks PERFECTION® and PERFECTION FENCE® for fences, pickets, guard rails, posts, gates, trellises, lanterns and lantern posts, as well as deck railings, decking, and other decking materials.  Plaintiff's use of the marks PERFECTION® and PERFECTION FENCE® ("the Marks") has been continuous and substantial since 1993.  (Skulsky Decl. ¶ 8).

All of Plaintiff's business is done under or in connection with the Marks. (Skulsky Decl. ¶ 9). Operating under the Marks, Perfection has achieved great success in the fencing and decking industry. Id. Perfection has invested heavily in promoting the Marks and developing goodwill associated with them. Id. Perfection spends a six-figure sum annually to advertise under the Marks in at least twenty-two publications, as well as several national and local television and radio stations. Id. Perfection appears frequently at trade shows, and belongs to numerous trade associations. Id. The Marks are also featured prominently on Plaintiff's websites, which include the domain names perfectionfence.com, perfection-fence.com, buyarbors.com, vinyldeckrailings.com, vinylrailingsystems.com. Id.

Perfection sells products under the Marks nationwide. (Skulsky Decl. ¶ 10). The Marks have acquired substantial secondary meaning, and are recognized in the industry as designating the source or origin of goods that are a leader in high-end fencing and decking products. Id.

**B.    Defendant And Its Confusingly Similar Marks**

Long after Perfection began using its Marks in connection with decking goods nationwide and had established its reputation as the leader in its field, Defendant Fiber began to use the identical mark PERFECTION on the same type of goods. After trying, and failing, to obtain a federal trademark registration on the identical mark, and despite having been put on actual notice of Perfection's Marks, Defendant Fiber began to use an additional, trivially modified mark (PROFECTION) on the same type of goods. Perfection discovered Defendant's infringing use of the marks last month (in mid-September 2004), and brought suit immediately. Fiber continues, however, to use both

- 4 -

PERFECTION and PROFECTION to sell the same goods as those sold by Perfection, in the same market, to the same end users.

There is no need for Defendant to use either Plaintiff's mark (PERFECTION) or a confusingly similar variant (PROFECTION). In fact, Defendant previously adopted and used its own, perfectly serviceable, trademarks. In July 1997, Defendant Fiber filed a trademark application for the mark FIBERAIL, and three months later filed a trademark application for the Mark FIBERON. (Skulsky Decl. ¶ 11, Exs. D, E). The registration for FIBERAIL issued in January 2001, on the supplemental register of the United States Patent and Trademark Office, and the registration for FIBERON issued on June 13, 2000, on the USPTO principal register. Id. Defendant used the marks FIBERAIL and FIBERON on a variety of decking goods. (Skulsky Decl. ¶ 12, Ex. F).

In August 2002, however, Defendant Fiber filed a trademark application for the mark PERFECTION on a wood substitute, in the form of boards, rails, spindles, balusters, posts and moldings—the same goods already covered by Defendant's FIBERAIL mark. (Skulsky Decl. ¶ 13, Ex. G; Fiber Answer ¶ 12). On January 27, 2003, the trademark examiner issued an office action refusing registration in light of Perfection's own prior registration and use. (Skulsky Decl. Ex. G). The examiner cited the Trademark Act Section 2(d), 15 U.S.C. § 1052(d), as the basis for the rejection, which prohibits the registration of marks which are likely to cause confusion with a previously registered mark. Id. The examiner wrote:

> "The examining attorney refuses registration … because the applicant's mark, when used on or in connection with the identified goods, so resembles the marks in U.S. Registration Nos. 2569755 and 2569756 [plaintiff's PERFECTION registrations] as to be likely to cause confusion, to cause mistake, or to deceive. … The marks

> are virtually identical.  The goods are very highly related.
> The similarities among the marks and the goods are so
> great as to create a likelihood of confusion among
> consumers."

Id.

U.S. Registration Nos. 2,569,755 and 2,569,756 are Plaintiff's registrations for PERFECTION FENCE in block letter form and as a stylized design, respectively. (Skulsky Decl. ¶ 6, Exs. A, B).  The examiner included copies of the USPTO registration records for those marks in her rejection notice, as well as a copy of the application for Plaintiff's then-pending registration for PERFECTION.  (Skulsky Decl. Ex. G; Fiber Answer ¶ 24).  Fiber's trademark application for PERFECTION was ultimately deemed abandoned.  (Skulsky Decl. Ex. G).

In August, 2002, Fiber also filed a trademark application for the mark PRO PERFECT to cover the same categories of decking goods.  (Skulsky Decl. ¶ 14, Ex. H; Fiber Answer ¶ 13).  That application is still pending in the U.S. Patent and Trademark Office.  (Skulsky Decl. Ex. H).  In June, 2003, Fiber filed a trademark application for the mark PROFECTION COMPOSITE DECKING to cover the same categories of decking goods.  (Skulsky Decl. ¶ 15, Ex. I; Fiber Answer ¶ 14).  That application was published for opposition on October 5, 2004 (shortly after this suit was filed).

Fiber has sold decking materials in Massachusetts bearing the mark PERFECTION, identical to Plaintiff's mark PERFECTION® which is also used for decking materials.   (Skulsky Decl. ¶ 17; Bilentschuk Decl. ¶¶ 7, 9, Ex. A).  In addition to using the same word PERFECTION as Plaintiff's mark on the same sort of goods as those sold by Plaintiff, Defendant also included a circle around one of the letters, moving it from the "P" in Plaintiff's mark to the "R" two letters in.  (Bilentschuk Decl. Ex. A).

Goods manufactured by Defendant and bearing the PERFECTION mark could be purchased in Massachusetts at least as recently as April or May of 2003. (Bilentschuk Decl. ¶¶ 5-7). Plaintiff only recently learned of Fiber's use of the identical mark when a Perfection employee brought in decking materials her husband had purchased at a local store, believing it to be Plaintiff's product. (Skulsky Decl. ¶ 17; Bilentschuk Decl. ¶ 10). These materials came to Perfection's attention in mid-September 2004, and Perfection filed this suit a few days thereafter. (Skulsky Decl. ¶ 17).

In November 2002, Fiber registered the domain name perfectiondecking.com, which combines Plaintiff's mark PERFECTION® with one of the categories of goods Plaintiff sells under that mark (i.e., decking). (Skulsky Decl. ¶ 19, Ex. K; Fiber Answer ¶ 16). In August 2003, Fiber registered the domain name profectiondecking.com. (Skulsky Decl. ¶ 20, Ex. L; Fiber Answer ¶ 17). Both domain names are active and in use by Defendant to this day. (Skulsky Decl. ¶ 21; Ex. M).

Fiber has been advertising and promoting its products at the domain name perfectiondecking.com at least since April 2003, and possibly longer. (Skulsky Decl. ¶ 22, Ex. N). Fiber has been advertising and promoting the same products at the domain name profectiondecking.com at least since December 2003, and possibly longer. (Skulsky Decl. ¶ 23, Ex. O).

On at least one version of Defendant's website that appeared in 2003, Fiber's product is referred to repeatedly as "Perfection™". (Skulsky Decl. ¶ 22, Ex. N). At some point between April, 2003, and December, 2003, some instances of the mark PERFECTION on the website had been replaced with the word PROFECTION, but the mark PERFECTION continued to appear in the title bar of Defendant's website, as well

as in the metatags[1] and throughout the HTML source code for the website.  (Skulsky Decl. ¶¶ 23, 24, Exs. O, P).  At the time this lawsuit was filed, Plaintiff's mark PERFECTION was repeated as many as fourteen times in the source code of a single page of Defendant's website, including on the title bar of every page.[2]  (Skulsky Decl. ¶ 24, Ex. P).

Certain pages of Defendant's website presently label the company's product as PERFECTION.  For example, as recently as mid-October, the installation guide and warranty posted at <http://www.profectiondecking.com/installpg2.pdf> referred to the product as PERFECTION rather than PROFECTION.  (Skulsky Decl. ¶ 31, Ex. W).  When this suit was filed, the title bar on all of the pages continued to read PERFECTION.  (Skulsky Decl. ¶ 24, Ex. P).

Search engine results, a common way of finding information and products on the World Wide Web, reveal how closely the terms PERFECTION and PROFECTION are tied.  When the search engine Google is queried on the phrase "profection fence" the results begin with the question "Did you mean: perfection fence."  (Skulsky Decl. ¶ 27, Ex. S).  Search engine query results on major search engines return Defendant's site among the top hits in searches on the term PERFECTION.  For example, Defendant's site

---

[1] "Metatags, which are embedded in the HTML code of a webpage, provide useful information that are not defined by other HTML elements. Their function is to provide information about a document and about a document's content. Search engines use this information to categorize, prioritize and rank websites." TechDis Accessibility & Useability Resource, Glossary.  http://www.techdis.ac.uk/seven/glossary.html (accessed October 7, 2004).

[2] Some time after Defendant was served with a summons in this suit, some, but not all, of the instances of PERFECTION on Defendant's website were changed to the term PROFECTION, which also infringes Plaintiff's trademarks.  (Skulsky Decl. ¶ 25, Ex. Q).  At the time this motion was filed, the term PERFECTION continues to appear at least once in the source code of every page of Defendant's website. (Skulsky Decl. ¶ 26, Ex. R).  One page continues to use the term PERFECTION in the title bar and nine other times throughout the source code.  Id.  Moreover, absent an injunction, there is nothing to prevent Fiber from reverting to the earlier version with numerous uses of PERFECTION.  More to the point, however, the mark PROFECTION is infringing and causing consumer confusion as well.

occupies the top three results in a search on MSN for "perfection decking." (Skulsky Decl. ¶ 28, Ex. T). Several websites continue to refer to Defendant's site and product as "perfection decking" and "perfection composite decking." (Skulsky Decl. ¶¶ 29, 30, Exs. U, V).

Fiber has advertised its products sold under the marks PERFECTION and PROFECTION through radio and print publications in Massachusetts and elsewhere. (Skulsky Decl. ¶¶ 16-17, Ex. J; Archer Decl. ¶ 4-5; Martin Decl. ¶ 4-6; Fiber Answer ¶ 15). Indeed, one of Perfection's own sales representatives was confused by Fiber's radio ad, believing it to have been an ad for his own employer, Perfection. Only after he mentioned the ad to Perfection was he advised that the ad was run not by Perfection but by its competitor, Fiber. (Skulsky Decl. ¶ 17; Archer Decl. ¶¶ 3-6).

Fiber has long been well aware that PERFECTION is Plaintiff's mark. It was on notice of Perfection's use of the mark at least by virtue of Perfection's trademark registrations, copies of which were provided to Fiber in January 2003 as part of the Trademark Office's office action rejecting Fiber's application for the identical mark. Fiber must also have become aware of Perfection's usage as a result of Perfection's extensive print, radio, and other advertising in the same industry as Fiber. (Skulsky Decl. ¶ 13, Ex. G; Fiber Answer ¶ 24). Fiber admits as much in its answer. (Fiber Answer ¶ 24). In fact, Fiber also admits that it continued to use the PERFECTION mark long after receiving notice of Perfection's Marks. (Fiber Answer ¶ 15). Fiber also admitted to actual notice of Perfection's use of the mark in February 2004, when Fiber was an exhibitor at the Northeastern Retail Lumber Association Lumber and Building Materials Expo '04 trade show in Boston and met two representatives of Perfection who

were attending the trade show.  (Fiber Answer ¶ 24; Skulsky Decl. ¶ 32).  In fact, the President of Fiber has known one of the Perfection founders for over twenty years and acknowledged Perfection's success at this trade show.  (Skulsky Decl. ¶ 32)

## III.    ARGUMENT

### A.    The Preliminary Injunction Standard

The four factors to be considered in a preliminary injunction analysis are: (1) the likelihood that plaintiff will succeed on the merits, (2) the risk of irreparable harm to the plaintiff absent an injunction, (3) the balance of hardships and (4) the public interest. Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 15 (1st Cir. 1996).

In trademark cases, a plaintiff is entitled to a preliminary injunction even without separate proof of irreparable injury, since a showing of likelihood of success creates a presumption of irreparable harm.  Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc., 982 F.2d 633, 640 (1st Cir. 1992); I.P. Lund Trading ApS v. Kohler Co., 163 F.3d 27, 33 (1st Cir. 1998) ("When considering claims based on copyright, trademark or trade dress infringement, irreparable harm may be presumed even in the absence of demonstration of actual injury").

"By its very nature, trademark infringement results in irreparable harm because the attendant loss of profits, goodwill, and reputation cannot be satisfactorily quantified and, thus, the trademark owner cannot adequately be compensated. Hence, irreparable harm flows from an unlawful trademark infringement as a matter of law."  Perfumania, Inc. v. Perfulandia, Inc., 279 F. Supp. 2d 86, 103-104 (D.P.R. 2003).

Defendant's use of the marks PERFECTION and PROFECTION for the same type of goods sold by Plaintiff under the mark PERFECTION creates a likelihood of confusion among consumers.  The harm to Plaintiff from this ongoing trademark

infringement is irreparable.  See Perfumania, 279 F. Supp. 2d at 104 ("irreparable harm flows from an unlawful trademark infringement as a matter of law").  An injunction would serve the public interest by preventing confusion.  Accordingly, Perfection's motion for a preliminary injunction should be granted. Ross-Simons, 102 F.3d at 15.

**B.**     **Plaintiff Is Likely To Succeed On The Merits Of Its Trademark Claim.**

To prevail on its claim for trademark infringement, Perfection must show: (1) that it owns a protectable trademark; (2) that Defendant is using a similar mark; and (3) that Defendant's use is likely to confuse the public.  Star Financial Services, Inc. v. AASTAR Mortgage Corp., 89 F.3d 5, 9 (1st Cir. 1996).  Perfection is likely to succeed on all prongs.

1.     PERFECTION and PERFECTION FENCE Are Plaintiff's Federally Registered Trademarks

Perfection owns the registrations for PERFECTION® in block letter form and for PERFECTION FENCE®, both in block letter form and as a stylized mark (with a circle and ribbon around the P).  (Skulsky Decl. ¶¶ 6-7, Exs. A, B, C).  These registrations are on the principal register of the United States Patent and Trademark Office as Nos. 2,826,042, 2,569,755, and 2,569,756 respectively.   Id.  Because Perfection's Marks appear on the principal register, it is entitled to a legal presumption of validity.  Equine Technologies, Inc. v. Equitechnology, Inc., 68 F.3d 542, 545 (1st Cir. 1995).  Perfection has also acquired common law trademark rights in the Marks, as Perfection's use of the Marks has been continuous and substantial since 1993.  (Skulsky Decl. ¶ 8).  See Planned Parenthood Federation of America, Inc. v. Problem Pregnancy of Worcester, Inc., 398 Mass. 480, 486 (1986) (long and exclusive use by first user creates common law trademark rights).

2.    Defendant's Infringing Trademarks Are Likely To Cause
Confusion.

To determine whether a likelihood of confusion exists, courts in the First Circuit consider eight factors: (1) the similarity of the marks; (2) the similarity of the goods; (3) the relationship between the parties' channels of trade; (4) the relationship between the parties' advertising; (5) the classes of prospective purchasers; (6) evidence of actual confusion; (7) the defendant's intent in adopting its mark; and (8) the strength of the plaintiff's mark. Volkswagenwerk Aktiengesellschaft v. Wheeler, 814 F.2d 812, 817 (1st Cir. 1987). The channels of trade, parties' advertising, and classes of prospective purchasers factors are usually analyzed together. Equine Technologies, Inc., 68 F.3d at 546. While each factor must be considered, no one factor is necessarily determinative. Volkswagenwerk, 814 F.2d at 817. The factors are non-exclusive, and are not always apt to the particular facts of a case. I.P. Lund, 163 F.3d at 43.

Factor 1 – Similarity of the Marks

PERFECTION as used by Plaintiff, and PERFECTION as used by Defendant, are identical. PROFECTION, which differs only by one letter (the first "E" being changed to an "O" and moved one position over), and which sounds almost indistinguishable from PERFECTION, is also confusingly similar to Plaintiff's Marks. This factor weighs heavily in Plaintiff's favor. Keds Corp. v. Renee Int'l Trading Corp., 888 F.2d 215, 222 (1st Cir.1989) (affirming preliminary injunction where defendant used confusingly similar trademark).

Defendant has repeatedly used the Mark PERFECTION to designate its products. It admits to having done so in its Answer (at ¶ 15). Moreover, at the time of the filing of this lawsuit, every page on Fiber's website included the text "Perfection Composite

Decking" in the title bar of the site, where Internet users look to see where on the Internet they are located.  (Skulsky Decl. ¶ 24, Ex. P).  This usage is highly likely—indeed, plainly calculated—to confuse consumers into believing that they are at Perfection Fence's website (or at a minimum that the sites, or companies, are affiliated or related).  See Societe des Produits Nestle, 982 F.2d at 639 (trademark infringement arises from usage likely to cause confusion as to affiliation).  Fiber's product itself also identifies it (falsely) as "Perfection."  For example, a sticker attached to one of Fiber's products reads "Please store Perfection™ Composite Decking undercover prior to installation and use stainless steel fasteners" and labels the product "Gray Perfection™."  (Bilentschuk Decl. ¶ 9, Ex. A).  Fiber's commercial use of the mark PERFECTION corresponds precisely to Perfection's federal trademark registration and commercial use of PERFECTION.  These marks are not just confusingly similar, they are, quite simply, identical.

Any stylization Fiber might use in its mark does not avoid infringement, because, as a block letter registration, the PERFECTION trademark covers all forms or styles in which the Marks may be used.  A block-letter registration is the broadest claim to a word mark, in that it is "not … restricted to any particular form or type."  Exxon Corp. v. National Foodline Corp., 579 F.2d 1244, 1247 (C.C.P.A. 1978).  Moreover, the stylization sometimes used in Fiber's marks[3] only adds to the likelihood of confusion.  Both marks, when used in stylized form, have a circle around a letter.  Plaintiff's mark puts the circle around the P at the beginning of the mark, while Defendant has placed a circle around the R, near the beginning.  The similarity of design in Fiber's stylized use

---

[3] Not every use by Fiber has any stylization.  For example, the "Perfection Composite Decking" and "Gray Perfection" as used on the above-described product, and the website usage also described above, are in plain, non-stylized form.

of the mark further illustrates the similarity of the marks and contributes to the likelihood of confusion.

Fiber's use of PROFECTION is also deceptively similar to Plaintiff's Marks. PERFECTION and PROFECTION both have the same number of letters; start and end with the same letter; and of the ten letters in each word, nine are found in the other word, eight in the same place. Only one letter differs between PERFECTION and PROFECTION (an E becomes an O), and all of the remaining letters are in the exact same order in both words except for a reversal of the second and third letters. <u>See</u> <u>Perfumania</u>, 279 F. Supp. 2d 86 (marks only differing by four letters found confusingly similar). If PROFECTION is a word at all, it is certainly not a commonly known word (it does not appear in many standard dictionaries), further suggesting that the public believes the word they are seeing or hearing is "PERFECTION," and thus will associate Defendant's decking products with Plaintiff's well-known PERFECTION Mark. The only alteration Fiber made to the mark was to slightly change an unaccented syllable, thereby minimizing the likelihood that anyone would be able to tell the difference. The similarity of the sound of the marks is made clear by the fact that (as discussed below) eight of Fiber's own dealers (who do not carry Plaintiff's product) reported that the name of the product <u>was</u> PERFECTION when asked over the telephone what product they carried, in discussions that took place a few days before this motion was filed. (Coleman Decl. ¶ 7).

Courts have found a likelihood of confusion between marks significantly more dissimilar in appearance than PERFECTION and PROFECTION. <u>See, e.g.</u>, <u>EMC Corp.</u> <u>v. Hewlett-Packard Co.</u>, 59 F. Supp. 2d 147 (D. Mass. 1999) (finding confusing similarity

between "EMC" and "HP SureStore E Disk Array MC256"); <u>Cluett, Peabody & Co. v.</u>
<u>Wright</u>, 46 F.2d 711 (C.C.P.A. 1931) (finding confusing similarity between ARROW and
AIR-O);  <u>Crown Radio Corp. v. Soundscriber Corp.</u>, 506 F.2d 1392 (C.C.P.A. 1974)
(CROWNSCRIBER and SOUNDSCRIBER); <u>Sterling Drug, Inc. v. Lincoln</u>
<u>Laboratories, Inc.</u>, 322 F.2d 968 (7th Cir. 1963) (DIAPARENE and DYPRIN); <u>Drexel</u>
<u>Enterprises, Inc. v. Hermitage Cabinet Shop, Inc.</u>, 266 F. Supp. 532 (N.D. Ga. 1967)
(HERITAGE and HERMITAGE); <u>KOS Pharmaceuticals, Inc. v. Andrx Corp.</u>, 369 F.3d
700 (3rd Cir. 2004) (ADVICOR and ALTOCOR).

       Where, as here, the goods sold by the parties are nearly identical, a lesser degree
of similarity is required to demonstrate a likelihood of confusion.  <u>Century 21 Real Estate</u>
<u>Corp. v. Century Life of America</u>, 970 F.2d 874, 877 (Fed. Cir. 1992) ("When marks
would appear on virtually identical goods or services, the degree of similarity necessary
to support a conclusion of likely confusion declines.").  <u>See also</u> <u>Chatam Intern. Inc. v.</u>
<u>UDV North American, Inc.</u>, 230 F.3d 1383 (Fed. Cir. 2000) (GOLDSTRASSEN and
GOLDSCHLÄGER confusingly similar where both marks used for liqueur).

       When spoken quickly (for example, in a radio advertisement), the marks
PERFECTION and PROFECTION sound nearly identical.  Even spoken slowly, the
sound of the marks are confusingly similar.  Numerous courts have recognized the
importance of sound in trademark law.   "Slight differences in the sound of trademarks
will not protect the infringer." <u>G. D. Searle & Co. v. Chas. Pfizer & Co.</u>, 265 F.2d 385,
387 (7th Cir. 1959) (reversing as clearly erroneous trial court's finding that BONAMINE
sounded "unlike" DRAMAMINE), <u>cert. denied</u>, 361 U.S. 819 (1959).  <u>See also</u> <u>TBC</u>
<u>Corp. v. Holsa, Inc.</u>, 126 F.3d 1470, 1472 (Fed. Cir. 1997) ("[I]n this age of business over

the telephone and advertising on TV and radio the close similarity in sound between GRAND SLAM and GRAND AM would be likely to result in mistake if not confusion."); <u>Star Financial Services, Inc.</u>, 89 F.3d at 10 (1st Cir. 1996) (noting similarity in pronunciation between STAR and AASTAR creates a probability of confusion); <u>Calamari Fisheries, Inc. v. The Village Catch, Inc.</u>, 698 F. Supp. 994, 1008 (D. Mass. 1988) (THE VILLAGE CATCH and THE DAILY CATCH have "the same sound and cadence"; granting preliminary injunction); <u>Perfumania, Inc. v. Perfulandia, Inc.</u>, 2004 WL 1753249 (D.P.R. 2004) (PERFULANDIA has similar sound to PERFUMANIA); <u>Anheuser-Busch, Inc. v. Caught-on-Bleu, Inc.</u>, 288 F. Supp. 2d 105, 115 (D.N.H. 2003) (BUD and BILLY BUDD sound alike; granting summary judgment for the plaintiff), <u>aff'd</u>, 2004 WL 1718357 (1st Cir. 2004); <u>Barbecue Marx, Inc. v. 551 Ogden, Inc.</u>, 110 F. Supp. 2d 689 (N.D.Ill. 2000) (granting preliminary injunction on basis of phonetic similarity between SMOKE DADDY and BONE DADDY), <u>rev'd on other grounds</u>, 235 F.3d 1041 (7th Cir. 2000); <u>Beer Nuts, Inc. v. Clover Club Foods Co.</u>, 805 F.2d 920, 926 (10th Cir.1986) (BREW NUTS and BEER NUTS held to be similar marks in part because the words "Brew" and "Beer," although "not identical, ... have a similar sound"); <u>Schmidt v. Honeysweet Hams, Inc.</u>, 656 F. Supp. 92, 96 (N.D.Ga.1986) (the marks HONEY BAKED HAM and HONEYSWEET HAM held similar based on the fact that they were the same in "sound and cadence"); <u>Bell Pub. Corp. v. Bantam Doubleday Dell Pub.</u>, 17 U.S.P.Q.2d 1634 (E.D.Pa. 1990) (DELL and BELL marks on magazines confusingly similar), <u>aff'd</u>, 932 F.2d 958 (3rd Cir. 1991); <u>Leon Finker Inc. v. Schlussel</u>, 469 F. Supp. 674 (D.C.N.Y. 1979) ("When dealing with goods which are frequently

purchased or traded by the spoken word … similarity of sound has been given particular importance."), aff'd, 614 F.2d 1288 (2nd Cir. 1979).

This factor weighs heavily in Perfection's favor.

Factor 2 – Similarity of the Goods

The goods in question are identical: decking materials.  Both Perfection and Fiber offer a wide range of decking materials.  Perfection's product line includes decking surfaces, balusters, rails, and post caps.  Fiber's product line also includes decking surfaces, balusters, rails, and post caps.[4]  It would be difficult to find a more complete overlap of goods in a trademark case.

When the Plaintiff and Defendant offer "virtually the same goods[,]" "there is a strong likelihood of confusion[,]" and thus a preliminary injunction should be granted. Boston Athletic Association v. Sullivan, 867 F.2d 22, 30 (1st. Cir. 1989).

This factor also weighs heavily in Perfection's favor.

Factors 3, 4 and 5 – Channels of Trade, Advertising and Purchasers

The similarity of the parties' channels of trade, advertising, and purchasers also supports the conclusion that confusion is likely.  Plaintiff sells its products under the Marks to builders and developers as well as directly to homeowners.  (Skulsky Decl. ¶ 10).  So does Defendant.  Plaintiff ships goods to customers nationwide.  Id.  Defendant, likewise, sells decking products all around the country.  Plaintiff and Defendant both

---

[4] The goods are even more similar because both are constructed from synthetic materials, and both companies emphasize the maintenance-free nature of their decking goods.  Compare Perfection's website ("It is a maintenance-free product, eliminating the problems of wood (warping, splintering, cupping, etc.), leaving you with a beautiful surface to be enjoyed for years to come") with Fiber's characterization on its website of its decking materials ("With Profection™, splitting, warping, and cupping is a thing of the past").  See Wynn Oil Co. v. Thomas, 839 F.2d 1183, 1191 (6th Cir. 1988) (where both marks use the same language to sell the a nearly identical service, "the likelihood of confusion must be considered great.")

- 17 -

advertise their products on the Internet.  The parties advertise and sell the exact same types of products, namely decking materials.

Although the full extent of Defendant's advertising is not yet known, there is direct overlap in Plaintiff's and Defendant's advertising at least in the South Shore, Cape Cod, and Harbor Islands area of Massachusetts.  Plaintiff advertises on WPLM 99.1, based in Plymouth, and Defendant has run advertisements on radio stations serving the same geographic area, including WQRC 99.9 FM, broadcasting out of Hyannis, and WXTK 95.1 FM, broadcasting out of West Yarmouth.  (Archer Decl. ¶ 4; Martin Decl. ¶ 5).

This factor also strongly favors Perfection.

Factor 6 – Evidence of Actual Confusion

It is well established that the existence of examples of actual confusion is among the strongest evidence of a likelihood of confusion.  "Evidence of actual confusion is ordinarily decisive."  Nailtiques Cosmetic Corp. v. Salon  Sciences, Corp., 1997 WL 244746 (S.D.Fla. 1997) (internal citations omitted).  "Actual confusion is such persuasive evidence of the likelihood of confusion that even a minimal demonstration of actual confusion may be significant."  Copy Cop v. Task Printing, Inc., 908 F. Supp. 37, 45 (D. Mass. 1995), citing Boston Athletic Association, 867 F.2d at 31.  See also Roto-Rooter Corp. v. O'Neal, 513 F.2d 44, 46 (5th Cir. 1975) ("[Actual confusion] is the best evidence of likelihood of confusion").

Although "[i]t is not necessary to show actual confusion" to prevail in a case for trademark infringement, Keds Corp. v. Renee International Trading Corp., 888 F.2d 215, 218 (1st. Cir. 1989), in the instant case Plaintiff is aware (even without any discovery) of several instances of actual confusion.  Fiber's use of Plaintiff's mark first came to

Plaintiff's attention last month when a Perfection sales representative mentioned Fiber's radio advertisements to Perfection's president, mistakenly believing those advertisements to be for Perfection's own products.  (Skulsky Decl. ¶ 17; Archer Decl. ¶ 6).[5]

Another example of actual confusion is that a Perfection employee's spouse purchased decking materials labeled PERFECTION, mistakenly believing he was supporting his spouse's employer, when in fact the materials he purchased were manufactured by Defendant Fiber.  (Skulsky Decl. ¶ 17; Bilentschuk Decl. ¶¶ 5-8, 10). When the employee brought in a sample of the decking with the PERFECTION sticker still attached, Perfection realized that it was not its own product, but rather the product of its direct competitor.  (Skulsky Decl. ¶ 17).

Even Fiber's own dealers show evidence of actual confusion.  When asked over the telephone, eight of Fiber's own dealers in New England stated that the name of Fiber's product was PERFECTION.  (Coleman Decl. ¶ 7).  Two dealers reported that the Fiber product "could be" the same as "Perfection Fence."  (Coleman Decl. ¶ 8). Certainly if these dealers are confused by Fiber's use of PERFECTION and PROFECTION, consumers purchasing decking supplies from these dealers are likely to be even more confused.

That some of these incidents of actual confusion involved Perfection's own employees does not make them any less relevant.  See Boston Athletic Association, 867 F.2d at 31 (1st. Cir. 1989) ("The fact that one of these incidents involved a client of [plaintiff] does not make it less relevant;  rather, it explains why the person went directly

---

[5] Because PROFECTION and PERFECTION sound so similar, the fact that actual confusion would result from the radio advertisements is not surprising.  Doubtless other consumers have been confused as well.

to" the plaintiff in response to a concern about the infringing product.)  Since both Plaintiff and Defendant sell their product nationwide, the actual confusion in the local market which Plaintiff has discovered is likely only the tip of the iceberg.

In many trademark cases where a mark has only recently been introduced, it is difficult to show evidence of actual confusion prior to discovery.  In this case, however, actual confusion is already manifest, and thus this factor weighs strongly in Perfection's favor.

<u>Factor 7 – Defendant's Intent in Adopting Its Mark</u>

There can be no question that Fiber was aware of Plaintiff's Marks and success in the marketplace for products sold under the Marks.  Plaintiff's longstanding use, advertising, and reputation in the same exact industry as Defendant makes it nearly certain that Fiber knew of Plaintiff's Marks long before Fiber first began to infringe (and attempted to register an identical mark).  Moreover, the President of Fiber has known one of the Perfection founders for over 20 years and acknowledged Perfection's success as a leader in the industry at a recent trade show.  (Skulsky Decl. ¶ 32).  Fiber certainly became aware of the Marks no later than when the trademark examiner rejected Fiber's application on the basis of Perfection's registrations for PERFECTION® and PERFECTION FENCE®.  (Skulsky Decl. ¶ 13, Ex. G).  Indeed, copies of Perfection's registrations were sent to Fiber in the office action dated January 27, 2003.  <u>Id</u>.  Fiber admits as much.  (Fiber Answer ¶ 24).  Fiber also advertises on radio stations in the same geographic area as Perfection—further evidence that it is aware of Perfection's Marks and intended to capitalize on Perfection's reputation.  (Skulsky Decl. ¶ 9; Archer Decl. ¶ 4; Martin Decl. ¶ 5).  Fiber also admitted to actual notice of Perfection's use of the mark in February 2004, when Fiber was an exhibitor at the Northeastern Retail Lumber

Association Lumber and Building Materials Expo '04 trade show in Boston and met two representatives of Perfection who were attending the trade show.  (Skulsky Decl. ¶ 32; Fiber Answer ¶ 24).

Fiber <u>admits</u> that it continued to use the mark PERFECTION long after it became aware of Perfection's registrations.  (Fiber Answer ¶ 15).   Further, Fiber was well aware of Perfection's Marks when it changed some—but not all—instances of its mark to PROFECTION.  Defendant's intent to trade on Plaintiff's goodwill is obvious: it first used the identical mark for an identical class of goods, and then sought to make an insignificant change to the infringing mark in the hope that it might escape liability.  <u>See Tamko Roofing Products, Inc. v. Ideal Roofing Co., Ltd.</u>, 282 F.3d 23, 40 (1st Cir. 2002) ("[A] court can frame an injunction which will keep a proven infringer safely away from the perimeter of future infringement"), <u>quoting</u> 5 <u>McCarthy on Trademarks</u> § 30:4 at 30-12.

This is not a case where a company innocently selects a mark that happens to be similar to another mark already in use covering related goods; rather, Fiber intentionally and knowingly <u>switched</u> from its prior trademark (FIBERAIL) to a mark <u>identical</u> to Perfection's mark to cover goods <u>identical</u> to Perfection's goods.  There is no plausible explanation other than an intent to free ride on Perfection's goodwill.  Even after slightly modifying its mark to PROFECTION in some instances, Fiber continued to use PERFECTION on every page of its website at the time this action was filed, including throughout the metatags, in a successful attempt to divert search engine traffic to its site

from Plaintiff's.[6]  See Promatek Industries, Ltd. v. Equitrac Corp., 300 F.3d 808, 812-13

(7th Cir.2002) (upholding preliminary injunction on the basis of defendant's reference to

the plaintiff's trademark in the metatags of the defendant's web page).  "[W]hen a

manufacturer intentionally uses another's mark as a means of establishing a link in

consumers' minds with the other's enterprise, and directly profits from that link, there is

an unmistakable aura of deception. Such a use is, by its very nature, 'likely to cause

confusion, or to cause mistake, or to deceive.'"  Boston Athletic Association, 867 F.2d at

35.  More importantly, Fiber has shown no signs of any intent to cease using the

infringing mark PROFECTION which has already caused, and is likely to cause,

substantial confusion in the trade.

        This factor also strongly favors Plaintiff.

### Factor 8 – Strength of the Plaintiff's Mark

        Courts categorize trademarks in four classes, in increasing order of distinctiveness

and strength: (a) generic; (b) descriptive; (c) suggestive; and (d) arbitrary.   I.P. Lund,

163 F.3d at 39.  The difference between descriptive and suggestive marks is often an

important one:

>        [A] word or figure is descriptive if it identifies a
> characteristic or quality of an article or service, and is
> suggestive if it "suggests rather than describes," some
> characteristic of the goods to which it is applied and
> requires the consumer to exercise his imagination to reach a
> conclusion as to the nature of these goods.

Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc., 43 F.3d 922, 934 (4th

Cir. 1995).

---

[6] Since being served with the complaint in this suit, Fiber has removed some, but not all, instances of
Plaintiff's PERFECTION mark from the HTML source code of its website.  (Skulsky Decl. ¶ 26, Ex. R).

Plaintiff's PERFECTION® and PERFECTION FENCE® marks, which "suggest rather than describe" the decking and fencing goods with which they are associated, are suggestive marks.   The USPTO agreed, registering all three Marks without requiring a showing that they had achieved "secondary meaning" in the minds of consumers – a necessary showing for registration of a mark that is merely descriptive. See Exs. A, B, C to Skulsky Decl. (PERFECTION® and PERFECTION FENCE® registration certificates lack the notation "2(f)"); Lone Star, 43 F.3d at 936 & n.15 (lack of notation "2(f)" on registration certificate establishes that the USPTO did not require a showing of secondary meaning for registration, and hence that the USPTO regarded the mark as suggestive rather than descriptive).  See also Equine Technologies, Inc., 68 F.3d at 547 (registration by USPTO indicative of strong mark).   A mark which is suggestive is among the most strongly protected by trademark law.  Id. at 544.

The length of use of these Marks by Perfection further evidences their strength. Perfection has been using the Marks continuously for over a decade.  See Equine, 68 F.3d at 547 (finding a mark strong after four years of use).  They are well known in the industry, and widely recognized by consumers.  (Skulsky Decl. ¶¶ 5, 8, 9).  See Keds Corp. v. Renee Int'l Trading Corp., 888 F.2d 215, 222 (1st Cir. 1989) ("relative renown in its field" adds to a trademark's strength).  Other than Defendant's infringing use, no one besides Perfection uses the mark PERFECTION for fencing and decking.  See Lambda Electronics Corporation v. Lambda Technology, Inc., 515 F.Supp. 915, 925 (S.D.N.Y. 1981) (presence of similar marks on similar products relevant to strength of mark).

Further evidence of the strength of Perfection's Marks comes from the fact that Plaintiff has substantial nationwide sales in connection with the Marks, and has spent large sums every year in advertising to generate and protect its goodwill.  (Skulsky Decl. ¶ 9).  Perfection's advertisements appear in over twenty publications, as well as on local and national television and on the radio.  Id.  Perfection has also built name recognition through regular attendance at numerous trade shows and membership in industry associations.  Id.  See Keds, 888 F.2d at 222 (extensive advertising is evidence of a strong mark).

In short, this factor strongly supports a finding that confusion is likely.

\*      \*      \*

The eight Volkswagenwerk factors each strongly support a finding that confusion between Defendant's marks PERFECTION and PROFECTION and Plaintiff's PERFECTION® and PERFECTION FENCE® Marks are likely.

**C.      Absent An Injunction, Plaintiff Will Suffer Irreparable Harm.**

If Defendant is permitted to continue its infringement, Plaintiff's image, reputation, market position and ability to control its trademarks and standards will be in jeopardy.  The resulting damage to Plaintiff will be irreparable.

1.      Irreparable Harm is Presumed.

The First Circuit, and district courts within it, have consistently held that trademark infringement automatically leads to irreparable harm.  Nestle, 482 F.2d at 640 (likelihood of success in trademark case establishes presumption of irreparable harm); I.P. Lund, 163 F.3d at 33 (in trademark cases, "irreparable harm may be presumed"); Keds, 888 F.2d at 220 (same); Camel Hair & Cashmere Inst. of Am., Inc. v. Associated Dry Goods Corp., 799 F.2d 6, 14 (1st Cir. 1986) ("There is considerable authority for the

view that the irreparable injury requirement is satisfied once it is shown that the defendant is wrongfully trading on the plaintiff's reputation.").

    2.    <u>Plaintiff's Lost Sales Are Difficult to Quantify.</u>

Even if evidence of irreparable harm were required, Perfection has such evidence in the form of immeasurable losses of business. One customer who bought Fiber's product mistakenly believing it to be Perfection's—Mr. Bilentschuk—has come to Perfection's attention only by the fortuity of the fact that he happens to be married to a Perfection employee. (Bilentschuk Decl. ¶¶ 7-10). Likewise, one person who was misled by Fiber's advertisement on the radio into believing the ad was for Perfection is known only because he is a sales representative for Perfection. (Archer Decl. ¶¶ 6-10). While actual losses are <u>known</u> to have occurred, it would be virtually impossible to quantify them with precision as the number of confused customers not directly known to Plaintiff is simply immeasurable. (This, of course, is why no showing of irreparable harm is required in trademark cases).

    3.    <u>Fiber's Inferior Product Will Damage Perfection's Reputation.</u>

A third basis for finding irreparable harm is the damage to Perfection's reputation that will inevitably result from its product being confused or associated with an inferior product. The First Circuit has recognized that "[f]ew harms are more corrosive in the marketplace than the inability of a trademark holder to control the quality of bogus articles thought (erroneously) to derive from it." <u>Hypertherm, Inc. v. Precision Products, Inc.</u>, 832 F.2d 697, 700 (1st Cir. 1987).

Defendant's product is an inferior substitute for Plaintiff's decking: Fiber's composite material absorbs heat, and thus can burn one's feet when walking on it in the summertime, while Perfection's product is always cool to the touch. (Martin Decl. ¶ 9).

Fiber's decking is porous, and thus will stain, while Perfection's product is nonporous and will not stain.  Id.  Fiber's product has only a 10 year limited warranty because it is less durable, while Perfection's product comes with a lifetime warranty.  Id.  Fiber's product is not skid resistant and could cause someone to slip in the winter, while Perfection's product is skid resistant.  Id.  Fiber's product is not waterproof, while Perfection's product is virtually waterproof, allowing a consumer to store items under the deck that will be protected from the rain.  Id.  Fiber's product also takes longer to install than Perfection's product.  Id.  In sum, Perfection will be irreparably harmed by being associated with this inferior product.  See Hypertherm, Inc., 832 F.2d at 700.

For all the above reasons, Plaintiff will continue to suffer irreparable harm unless the requested preliminary injunction is granted.

**D.    An Injunction Will Impose Minimal Harm On Defendant.**

An injunction would not stop Defendant from competing in the market for decking materials, nor would it shut down its factories or deprive it of suppliers or customers.  Entry of the requested injunction would require only that Fiber stop infringing Plaintiff's PERFECTION® and PERFECTION FENCE® Marks.  Defendant would still be able to carry on its business as usual, under a different trademark.  For example, Fiber could simply resume use of the FIBERAIL and FIBERON marks that it had been using for years prior to its adoption of the confusingly similar marks PERFECTION and PROFECTION.  Since Defendant has only recently switched to PERFECTION and PROFECTION, any harm in adopting a suitable mark would be minimal.  Any harm or expense resulting from the change would, in any event, be of Defendant's own doing, having gone into this situation well aware of Plaintiff's Marks, having known of Plaintiff for over a decade and indeed having received copies of

registrations of Plaintiff's Marks from the Trademark Office (as part of the office action rejecting Fiber's attempted registration of PERFECTION). <u>See</u> <u>Schawbel Corp. v.</u> <u>Conair Corp.</u>, 122 F. Supp. 2d 71, 85 (D. Mass. 2000) (where harm to defendant is of defendant's own doing, plaintiff prevailed on balance of harms), <u>aff'd</u>, 2001 WL 210926 (Fed. Cir. 2001). As a court in this District noted in a similar case,

> an injunction at this time would restrain [the defendant] at the very beginning of its sales efforts, nipping the operation in the bud. Should we deny preliminary relief, [the defendant] may be more firmly entrenched in the American market by the time of trial, making permanent relief more problematical. Under these circumstances, a preliminary injunction is in one sense 'an act of kindness' to the defendant, since "[i]t cuts him off from a business life which, from all the portents, would involve a series of trademark frustrations."

<u>Trak Inc. v. Benner Ski KG</u>, 475 F. Supp. 1076, 1078 (D. Mass. 1979) (internal citation omitted).

As a practical matter, Defendant would simply have to choose another trade name and cease use of the present marks. Given that Defendant has switched from FIBERAIL to PERFECTION to PROFECTION on the same products over a short period of time, switching back to FIBERAIL (or another noninfringing mark) should not prove unduly burdensome. The balance of hardships strongly favors entry of the injunction.

### E.    <u>The Public Interest Favors An Injunction To Prevent Confusion.</u>

It is well established that the public interest favors granting a preliminary injunction to prevent confusion of consumers as a result of a defendant's trademark infringement. <u>Digital Equipment Corp. v. AltaVista Technology, Inc.</u>, 960 F. Supp. 456, 472 (D. Mass. 1997), <u>citing</u> <u>Hypertherm, Inc. v. Precision Prods., Inc.</u>, 832 F.2d 697, 700 (1st Cir. 1987) (where plaintiff shows likelihood of success on the merits, issuance of

preliminary injunction serves the public interest "given the societal value of full disclosure and fair competition, together with the policy of the law to provide at least minimal protection to established trade names.").  See also Calamari Fisheries, 698 F. Supp. at 1015 ("[p]reventing consumer confusion is clearly in the public interest.").

In this case, the public interest plainly favors preventing the confusion that is likely to result from continued infringement by Defendant of Plaintiff's PERFECTION® and PERFECTION FENCE® trademarks.

**IV.    CONCLUSION**

Plaintiff respectfully requests that the Court grant Perfection's Motion and preliminarily enjoin Fiber from further confusing the marketplace with its infringing trademarks.

Respectfully submitted,

PERFECTION FENCE CORP.

By its counsel,

Dated: October 26, 2004

    /s/ Michael A. Albert
Michael A. Albert, BBO # 558566
malbert@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210
(617) 646.8000 Phone
(617) 646.8646 FAX