UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PERFECTION FENCE CORP.,

    Plaintiff,

v.

FIBER COMPOSITES LLC,

    Defendant.

Civil Action No. 04-12094 GAO

**DEFENDANT'S MOTION IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND SUPPORTING MEMORANDUM**

John R. Skenyon (BBO # 465440)
Amy L. Brosius (BBO # 656521)
FISH & RICHARDSON P.C.
225 Franklin Street
Boston, MA 02110-2804
Tel: (617) 542-5070
Fax: (617) 542-8906

Attorneys for Defendant
Fiber Composites LLC

# TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................. 1

II. BACKGROUND .................................................................................................... 3

    A. Fiber Composites ...................................................................................... 3

    B. Perfection Fence ........................................................................................ 6

III. ARGUMENT .......................................................................................................... 9

    A. PLAINTIFF HAS CEASED USING "PERFECTION" SO PRELIMINARY INJUNCTION AS TO THIS MARK IS NOT APPROPRIATE ...................... 10

    B. LIKELIHOOD OF SUCCESS ON THE MERITS WITH RESPECT TO "PROFECTION" IS DE MINIMUS BECAUSE PLAINTIFF IS NOT USING THE MARK IN COMMERCE AND BECAUSE LIKELIHOOD OF CONFUSION IS DI MINIMUS ................................................................ 12

        1) The In Use Requirement ................................................................ 12

        2) The Likelihood of Confusion Factors ............................................ 13

        3) Applying the Likelihood of Confusion Factors ............................. 14

            (i) Strength of the Plaintiff's Mark ....................................... 14

            (ii) Similarity of the Marks ..................................................... 16

            (iii) Similarity of the Goods .................................................... 18

            (iv) Relationship Between the Parties' Channels of Trade, Advertising, and Class of Prospective Purchasers ............. 19

            (v) Actual Confusion .............................................................. 21

            (vi) Defendant's Intent in Adopting its Mark ........................... 24

    C. IRREPARABLE INJURY HAS NOT BEEN DEMONSTRATED AND IS UNLIKELY ............................................................................................. 24

    D. THE BALANCE OF HARDSHIPS FAVORS THE DEFENDANT ............. 25

      E.    THE PUBLIC INTEREST FAVORS THE DEFENDANT .............................. 26

IV.   CONCLUSION ................................................................................................................ 26

## **TABLE OF AUTHORITIES**

Page(s)

*Aktiebolaget Electrolux v. Armatron Intern., Inc.*,
999 F.2d 1 (1st Cir. 1993) .................................................................................. 22

*American Bd. of Psychiatry and Neurology, Inc. v. Johnson-Powell*,
129 F.3d 1 (1st Cir. 1997) ............................................................................. 11, 12

*Anheuser-Busch, Inc. v. Caught-on-Bleu*,
288 F. Supp. 2d 105 (D.N.H. 2003) .................................................................. 20

*Bay State Savings Bank v. Baystate Financial Services, LLC*,
No. Civ.A.03-40273-NMG, 2004 WL 2181600, at *3
(D. Mass. Jun. 25, 2004) .................................................................................... 10

*Bayshore Group Ltd. v. Bay Shore Seafood Brokers, Inc.*,
762 F. Supp. 404 (D. Mass. 1991) ................................................................ 10, 25

*Beacon Mut. Ins. Co. v. OneBeacon Ins. Group*,
376 F.3d 8 (1st Cir. 2004) .................................................................................. 22

*Boston Athletic Assn. v. Sullivan*,
867 F.2d 22 (1st Cir. 1989) ................................................................................ 14

*Boustany v. Boston Dental Group, Inc.*,
42 F. Supp. 2d 100 (D. Mass. 1999) .................................................................. 14

*Calamari Fisheries, Inc. v. The Village Catch, Inc.*,
698 F. Supp. 994 (D. Mass. 1988) ..................................................................... 16

*Citizens Financial Group, Inc. v. Citizens Nat. Bank of Evans City*,
383 F.3d 110 (3d Cir. 2004) ............................................................................... 23

*DeCosta v. Viacom Intern., Inc.*,
981 F.2d 602 (1st Cir. 1992) .............................................................................. 12

*Exquisite Form Industries, Inc. v. Exquisite Fabrics of London*,
378 F. Supp. 403 (S.D.N.Y. 1974) .................................................................... 15

*First Sav. Bank, F.S.B. v. First Bank System, Inc.*,
101 F.3d 645 (10th Cir. 1996) ........................................................................... 15

*Hasbro, Inc. v. Clue Computing, Inc.*,
66 F. Supp. 2d 117 (D. Mass. 1999) .................................................................................... 15

*Helzberg v. Katz & Ogush*,
73 F.2d 626 (C.C.P.A. 1934) ................................................................................................ 15

*Homemakers Home & Health Care Services, Inc. v. Chicago Home for Friendless*,
484 F.2d 625 (7th Cir. 1973) ................................................................................................ 14

*Hoover Co. v. Royal Appliance Mfg. Co.*,
238 F.3d 1357 (Fed. Cir. 2001) ............................................................................................. 14

*I.P. Lund Trading ApS v. Kohler Co.*,
11 F. Supp. 2d 112 (D. Mass. 1998) ................................................................................. 9, 10

*I.P. Lund Trading ApS v. Kohler Co.*,
163 F.3d 27 (1st Cir. 1998) .............................................................................................. 10, 14

*Infinity Broadcasting Corp. v. Greater Boston Radio, II, Inc.*,
No. 93-11161-WF, 1993 WL 343679, at *9
(D. Mass. Aug. 18, 1993) ........................................................................................................ 9

*International Assn. of Machinists and Aerospace Workers, AFL-CIO v.
Winship Green Nursing Center*, 103 F.3d 196 (1st Cir. 1996) ....................................... 13, 23

*Lane Capital Management, Inc. v. Lane Capital Management, Inc.*,
15 F. Supp. 2d 389 (S.D.N.Y. 1998) ...................................................................................... 16

*Leathersmith of London, Ltd. v. Alleyn*,
695 F.2d 27 (1st Cir. 1982) .................................................................................................... 20

*Medinol Ltd. V. NeuroVasx, Inc.*,
67 USPQ 2d 1205 (TTAB 2003) ............................................................................................ 13

*Northern Light Technology v. Northern Lights Club*,
97 F. Supp. 2d 96 (D. Mass. 2000) ........................................................................................ 10

*Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*,
657 F.2d 482 (1st Cir. 1981) .......................................................................... 17, 20, 21, 24

*Purolator, Inc. v. EFRA Distributors, Inc.*,
687 F.2d 554 (1st Cir. 1982) .................................................................................................. 14

*Q Division Records, LLC v. Q Records, QVC, Inc.*,
No. 99-10828-GAO, 2000 WL 294875, at *2
(D. Mass. Feb. 11, 2000)..................................................................................9, 18

*Robot Wars LLC v. Roski*,
51 F. Supp. 2d 491 (S.D.N.Y. 1999)................................................................. 16

*Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*,
102 F.2d 12 (1st Cir. 1996)............................................................................9, 10

*Star Financial Services, Inc. v. AASTAR Mortg. Corp.*,
89 F.3d 5 (1st Cir. 1996)..................................................................................... 14

*Stop & Shop Supermarket Co. v. Big Y Foods, Inc.*,
943 F. Supp. 120 (D. Mass. 1996) .................................................................. 18

*Supreme Wine Co. v. American Distilling Co.*,
310 F.2d 888 (2d Cir. 1962).............................................................................. 15

*TEC Engineering Corp. v. Budget Molders Supply, Inc.*,
82 F.3d 542 (1st Cir. 1996)................................................................................ 10

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PERFECTION FENCE CORP.,

        Plaintiff,

v.

FIBER COMPOSITES LLC,

        Defendant.

Civil Action No. 04-12094 GAO

### DEFENDANT'S MOTION IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND SUPPORTING MEMORANDUM

## I.  INTRODUCTION

The plaintiff, Perfection Fence Corporation ("Perfection Fence"), has moved for a preliminary injunction in this trademark case contending that it is suffering irreparable harm as a result of the alleged infringement of its PERFECTION FENCE and PERFECTION trademarks. The basis for the complaint and the motion is that the defendant, Fiber Composites LLC ("Fiber Composites"), sells a composite decking product under its PROFECTION and design mark. According to Perfection Fence, it sells an "identical" product, and it alleges that actual confusion has resulted and lost sales have occurred.

Fiber Composites opposes this motion because Perfection Fence has misrepresented the facts as to both Perfection Fence's and Fiber Composites' marks and products. Throughout its lengthy submission, Perfection Fence refers to the respective decking products of the parties as "identical", but in so doing, Perfection Fence always carefully omits the fact that the decking product it sells is *not* sold under either of its PERFECTION marks asserted as infringed here.

Instead, Perfection Fence is merely a re-seller of the minor line of decking material manufactured by a third party, and it resells that decking material under the third party's registered GORILLA DECK® trademark, and not its own.

Secondly, Perfection Fence suggests that it and Fiber Composites are direct competitors who sell the same goods to the same consumers through the same channels of trade. That too is untrue. Perfection Fence sells *fencing* products, while Fiber Composites does not. Further, while Fiber Composites sells various types of decking products, the only decking product it sells under its PROFECTION and design mark is a specialty product sold exclusively to the Lumbermen's Merchandising Corporation ("LMC"), the stores of which deal primarily with professional builders and apparently do not stock any Perfection Fence products.

Finally, Perfection Fence attempts to rely on what it calls evidence of "actual confusion". In reality, at best, it amounts to hearsay that does not involve customer confusion at all, or just a single instance involving an employee's husband. In the latter case, the "confusion" involved Fiber Composites' PERFECTION mark, which mark Fiber Composites voluntarily abandoned over a year ago.[1] Further, while Perfection Fence states that actual lost sales are "known to have occurred", it does not cite even a single example.

In sum, there is no infringement here or any irreparable harm to Perfection Fence. On the other hand, a preliminary injunction entered against Fiber Composites would be incredibly harmful in terms of lost advertising, the expense of re-labeling its extensive inventory of almost a quarter of a million pieces (each with two labels), and the resulting harm to its reputation with its customers in general.

---

[1] Even though this mark has not been in use for over a year, Perfection Fence still seeks to preliminarily enjoin its use.

2

## II. BACKGROUND

### A. Fiber Composites

Fiber Composites manufactures decking materials, specifically wood composite decking. Declaration of Douglas G. Mancosh ¶ 2 (hereinafter "Mancosh Decl. ¶ __"). Wood composites are an extremely popular alternative to wood decking. *Id.* at ¶ 6. They are a high-tech combination of wood and plastic that have the appearance and feel of real wood, but with far greater durability and longevity. *Id.* Although they are more expensive than wood, they are still the fastest growing material used in the decking industry. *Id.* at ¶¶ 5, 7.

Fiber Composites manufacturers different lines of decking, some of which are sold under its FIBERAIL and FIBERON trademarks. *Id.* at ¶ 21. In August 2002, Fiber Composites decided to develop a totally new line of composite decking to sell exclusively to LMC. *Id.* at ¶¶ 9, 20. LMC is a nationwide cooperative whose members comprise an exclusive group of professional building material dealers. *Id.* at ¶ 11. LMC planned to make Fiber Composites' new product available to its member dealers. *Id.*

Initially, Fiber Composites and LMC selected PERFECTION as the name of the new product in part to signify Fiber Composites' product as the "perfect board." *Id.* at ¶ 10. Fiber Composites began using the mark on the new family of decking products in October 2002 in the following form:



*Id.* at ¶ 2. Fiber Composites filed a trademark application to register the mark, and also registered a corresponding domain name: perfectiondecking.com. *Id.* at ¶¶ 10, 17.

Three months later, Fiber Composites learned that the Patent and Trademark Office ("PTO") had refused its application for PERFECTION in light of Perfection Fence's registrations for PERFECTION FENCE. *Id.* at ¶ 13. Instead of arguing the issue in the PTO, Fiber Composites decided to rename its product. *Id.* After reviewing its earlier list of names, it settled on PROFECTION, a merging of the elements from an earlier mark Fiber Composites had considered: PRO PERFECT. *Id.*

Fiber Composites filed an application[2] to register the new mark in the form in which it uses the mark on its decking products:



It also registered a new domain name: profectiondecking.com. Mancosh Decl. ¶ 17.

In summer 2003, Fiber Composites began changing to its new mark. *Id.* at ¶ 15. It re-labeled existing inventory, printed and distributed new product material and made sure that all new product shipped from Fiber Composites' plant that summer bore the new PROFECTION trademark. *Id.* at ¶ 16. LMC sent letters to its "Perfection" dealers announcing the name change to PROFECTION. *Id.* By September 2003, the name change to PROFECTION was complete. *Id.* at ¶ 18. Most if not all "Perfection" inventory that remained in the hands of dealers had been replaced by PROFECTION products by the end of 2003. *Id.* Although there were some residual uses of "Perfection" on its profectiondecking.com website that had inadvertently escaped Fiber

---

[2] The Patent and Trademark Office did not consider Fiber's PROFECTION and Design mark and Perfection Fence's PERFECTION FENCE or PERFECTION marks confusingly similar to one another, and recently approved Fiber's application for publication. Declaration of Amy L. Brosius ¶ 15 (hereinafter "Brosius Decl. ¶ __").

Composites' editing process in summer 2003, Fiber Composites immediately took steps to address these uses as soon as it learned of them. Mancosh Decl. ¶ 19.

When it received notice of this lawsuit from Perfection Fence in October 2004, Fiber Composites had been using PROFECTION for over a year, with no known confusion in the marketplace. *Id.* at ¶ 20. Although Fiber Composites' principal, Douglas Mancosh, heard of Perfection Fence many years ago while he was with BB&S Treated Lumber, he knew Perfection Fence as a fencing company, not as a competitor in the decking industry. *Id.* at ¶¶ 4, 24.

While Fiber Composites has changed its name once before, it was after only three months of using the "Perfection" name. *Id.* at ¶ 13. PROFECTION, on the other hand, has been used by Fiber Composites, LMC and LMC's dealers now for over a year, and production and sales of PROFECTION products have been much more extensive than they were under the "Perfection" mark during 2003. *Id.* at ¶ 18. Consequently, a preliminary injunction would be very disruptive to Fiber Composites' business and would result in financial harm to Fiber Composites in terms of lost business, lost expenditures, and new unplanned outlays. Id. at ¶¶ 21-22. A name change would place Fiber Composites' relationship with LMC and the future of the PROFECTION product line – a product with $14 million in annual sales – in jeopardy, because many LMC dealers, when faced with the inevitable delays in product availability that will be a consequence of Fiber Composites recalling and re-labeling its existing inventory, will choose to drop the PROFECTION product line instead. *Id.* at ¶ 23.

A name change would also mean that Fiber Composites, LMC, and its dealers would lose all of the goodwill in the PROFECTION name created by their $1-1.5 million dollars in combined advertising and marketing expenditures. *Id.* at ¶ 21. It would also mean that Fiber Composites has to incur substantial labor costs to re-label – by hand – its nearly quarter of a

5

million pieces of existing inventory, each of which bear two PROFECTION labels. *Id.* at ¶ 22. Fiber Composites would lose tens of thousands of dollars it has spent on existing PROFECTION packaging. *Id.* at ¶ 21. After Fiber Composites spends the additional time and money to select a replacement name, it would then have to spend tens of thousands more dollars to create new packaging. *Id.* The harm to Fiber Composites from a preliminary injunction would be very severe. *Id.* at ¶ 21.

### B.  Perfection Fence

Perfection Fence is a manufacturer and retailer of fencing materials, and frequently characterizes itself, with the exception of in its motion, as a member of the fencing industry. See Brosius ¶¶ 8, 10. Perfection Fence's advertising focus – on its website, in its catalogs and on its showroom floor – is overwhelming on the manufacture and sale of fencing, not decking. *Id.* at ¶¶ 8-10. Even though Perfection Fence claims to be in the "same industry" as Fiber Composites (Plaintiff's Brief in Support of its Motion for Preliminary Injunction at 20 (hereinafter "Plf. Brf. at __")), the Perfection Fence name is not recognized in Fiber Composites' deck-building industry as a source of decking goods, nor are Perfection Fence's PERFECTION FENCE and PERFECTION trademarks recognized as a decking brand or decking category. Mancosh Decl. ¶ 4.

Perfection Fence sells one line of PVC vinyl decking. However, this vinyl decking is advertised, sold, and ultimately delivered to customers by Perfection Fence under the brand name GORILLA DECK® *not* under Perfection Fence's PERFECTION FENCE or PERFECTION trademarks. Brosius Decl. ¶¶ 10, Ex. H. p. 87; Declaration of Scott Clifford ¶¶ 4-6 (hereinafter "Clifford Decl. ¶ __"). GORILLA DECK® is a trademark registered and owned by Homeland Vinyl Products, Inc. ("Homeland") for "non-metallic building materials, namely

6

polyvinyl chloride (PVC) planks, rails, pickets and posts for floor decking." Brosius Decl. ¶ 11. Perfection Fence appears to be just one of the many distributors who retail Homeland's GORILLA DECK® decking throughout the country. *Id.* at ¶¶ 12-14.

Perfection Fence asserts throughout its motion that the parties' goods are the "same" (Plf. Brf. at 2, 5); "nearly identical" (Plf. Brf. at 15); and "identical" (Plf. Brf. at 17), but when it does so, it is referring to the decking product it sells as GORILLA DECK®. Even so, the parties' decking products are quite different. Fiber Composites sells wood composite decking, whereas the GORILLA DECK® decking sold by Perfection Fence is vinyl decking. Mancosh Decl. ¶ 3; Brosius Decl. ¶ 10, Ex. H, p. 87. Perfection Fence's claims that Fiber Composites' decking is inferior to the vinyl decking sold by Perfection Fence (Plf. Brf. at 25), but the facts actually support an opposite conclusion. Mancosh Decl. ¶¶ 7, 8. Composites have the appearance and feel of real wood, whereas vinyl decking tends to have an unnatural and unattractive commercial finish. *Id.* at ¶ 8. Composite decking is solid, whereas vinyl decking is hollow. *Id.* Both composite decking and vinyl decking are about 2-3 times more expensive than wood, but vinyl decking tends to be about 30% more expensive than composite decking. *Id.* ¶¶ 7-8. Most importantly however, consumers prefer composite decking to vinyl decking by a margin of almost 9 to 1. *Id.* ¶ 8.

Perfection Fence also claims that the goods of both parties are sold in similar channels of trade. Plf. Brf. at 17. Perfection Fence appears to display and sell its products exclusively at its two showrooms in Massachusetts and does not appear to sell products through third parties. Brosius Decl. ¶¶ 8-9. Fiber Composites' PROFECTION decking, on the other hand, is sold exclusively through LMC dealers (Mancosh Decl. ¶ __), and Perfection Fence is not an LMC dealer. *Id.* at ¶ 11. In addition, the LMC dealers who sell PERFECTION decking do not appear

7

to stock any decking products made by Perfection Fence. Declaration of Christopher Hadley ¶¶ 2-5 (hereinafter "Hadley Decl. ¶ __"); Declaration of Adjoa Afful ¶¶ 2-3 (hereinafter "Afful Decl. __"); Declaration of Chad Roberts ¶¶ 2-4 (hereinafter "Roberts Decl. ¶ __").

Perfection Fence's further claim that "no one besides Perfection [Fence] uses the mark PERFECTION for fencing and decking" (Plf. Brf. at 23) also does not appear to be based in fact. There are at least five other businesses in the fencing and/or decking industries in the United States who are currently using the name "Perfection". Brosius Decl. ¶¶ 2-7.

Although Perfection Fence alleges three examples of actual confusion stemming from Fiber Composites' use of its marks, they all originate with Perfection Fence employees, or in one case, with the relative of an employee. Plf. Brf. at 18-20. One of Perfection Fence's examples of alleged actual confusion is that a Perfection Fence employee heard a radio ad for PROFECTION, and mistakenly believed it was a radio ad for his company. Id. at 18-19. Another example involves telephone calls that an employee of Perfection Fence made to various LMC dealers, in which according to the Perfection Fence employee, eight dealers allegedly mispronounced the PROFECTION mark as "Perfection", and two dealers allegedly stated that Fiber Composites' decking product "could be the same as Perfection Fence." Id. at 19. The last example of alleged actual confusion involves the husband of a Perfection Deck employee who claims that in spring of 2003 he purchased Fiber Composites' "Perfection" decking (a name that Fiber Composites has not used in over a year) believing it was a product made by Perfection Fence. Id. at 19; Mancosh Decl. ¶ 18. None of Perfection Fence's examples of alleged actual confusion originate with an independent third party. Plf. Brf. at 18-20. Fiber Composites is unaware of any instances of actual confusion in the more than one year it has used the PROFECTION mark, and is equally unaware any instances of confusion stemming from Fiber

8

Composites' use of "Perfection" from October 2002 through September 2003. Mancosh Decl. ¶ 20.

Perfection Fence alleges that it has evidence of "immeasurable losses" to its business due to Fiber Composites' use of the PERFECTION and PROFECTION marks. Plf. Brf. at 25. But Perfection Fence provides no evidenciary support for these alleged lost sales.

### III. ARGUMENT

"A preliminary injunction is a 'drastic remedy that must be used sparingly and only in cases where the need for extraordinary equitable relief is clear and plain.'" *Infinity Broadcasting Corp. v. Greater Boston Radio, II, Inc.*, No. 93-11161-WF, 1993 WL 343679, at *9 (D. Mass. Aug. 18, 1993) (quoting *Augusta News Co. v. News America Publishing, Inc.*, 750 F. Supp. 28, 31 (D.Me. 1990)); *see also I.P. Lund Trading ApS v. Kohler Co.*, 11 F. Supp. 2d 112, 117 (D. Mass. 1998) (A preliminary injunction is an "extraordinary remedy."). "It constitutes the exercise of a far-reaching power which ought not be indulged in lightly." *Q Division Records, LLC v. Q Records, QVC, Inc.*, No. 99-10828-GAO, 2000 WL 294875, at *2 (D. Mass. Feb. 11, 2000).

We concur with Perfection Fence that within this daunting framework the four basic points it must establish to succeed on this (or any) motion for preliminary injunction are: (1) that it is likely to prevail on the merits; (2) that there is likelihood of irreparable injury to it without the injunction; (3) that the harm to it without relief outweighs harm resulting to the defendant from the injunction; and (4) that the public interest will be served by the preliminary relief.

Many recent decisions in this district and this circuit employ a slightly different test for preliminary injunctive relief in trademark cases than that cited by Perfection Fence in the non-trademark *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.2d 12, 15 (1st Cir. 1996),

requiring that a plaintiff show a *substantial* likelihood of success on the merits, and that there exist, absent injunctive relief, a *significant* risk of irreparable harm. *See TEC Engineering Corp. v. Budget Molders Supply, Inc.*, 82 F.3d 542, 544 (1st Cir. 1996) (emphasis added); *see also, e.g., I.P. Lund Trading ApS v. Kohler Co.*, 163 F.3d 27, 33 (1st Cir. 1998); *Northern Light Technology v. Northern Lights Club*, 97 F. Supp. 2d 96, 109 n.16 (D. Mass. 2000); *Bay State Savings Bank v. Baystate Financial Services, LLC*, No. Civ.A.03-40273-NMG, 2004 WL 2181600, at *3 (D. Mass. Jun. 25, 2004); *but cf. e.g., American Bd. of Psychiatry and Neurology, Inc. v. Johnson-Powell*, 129 F.3d 1, 3 (1997).

Perfection Fence's motion for preliminary relief is prefaced on a claim for trademark infringement stemming from Fiber Composites' use of the "Perfection" and "Profection" names. Plf. Brf. at 11. Perfection Fence's likelihood of success, therefore, depends on its ability to demonstrate that Fiber Composites' past use of "Perfection" and current use of "Profection" cause a likelihood of confusion as to source or sponsorship. *See Bayshore Group Ltd. v. Bay Shore Seafood Brokers, Inc.*, 762 F. Supp. 404, 409 (D. Mass. 1991). Even under the less rigorous *Ross-Simons* test, Perfection Fence falls far short of meeting its burden that it is likely to prevail on the merits of its claim, and most certainly has not shown a *substantial* likelihood of doing so.

### A. PLAINTIFF HAS CEASED USING "PERFECTION" SO PRELIMINARY INJUNCTION AS TO THIS MARK IS NOT APPROPRIATE

In the trademark context, a plaintiff who demonstrates likelihood of success on the merits creates a presumption of irreparable harm and a presumption that the granting of the preliminary injunction will serve the public interest. *See I.P. Lund Trading ApS v. Kohler Co.*, 11 F. Supp.2d 112, 117 (D. Mass. 1998). Notwithstanding these presumptions, however, a plaintiff still retains

10

the "ordinary burden of showing a sufficient likelihood that the infringing conduct would occur *in the future* so as to give rise to an enjoinable threat of irreparable harm." *American Bd. of Psychiatry and Neurology, Inc. v. Johnson-Powell*, 129 F.3d 1, 4 (1st Cir. 1997) (emphasis added). If the non-movant can demonstrate that they have voluntarily reformed their use of the allegedly infringing mark, a preliminary injunction will be inappropriate. *Id.* "[I]rrefutably demonstrated, total reform", furthermore, "will *always suffice* to prevent injunctive relief. *Id.* at 5 (emphasis added)(quoting *Pic Design Corp. v. Bearings Specialty Co.*, 436 F.2d 804, 809 (1st Cir. 1971))

The evidence shows quite plainly that Fiber Composites has completely abandoned its use of "Perfection." Fiber Composites ceased using the name in September 2003, long before it received notice of Perfection Fence's lawsuit in October 2004. Mancosh Decl. ¶ 18. It selected a new name, and took many steps to re-label existing inventory, print new product literature and educate LMC's dealers that "Perfection" had been replaced by PROFECTION. *Id.* ¶¶ 13-18. More importantly, Fiber Composites has no intention of ever using the "Perfection" name again in the future. *Id.* ¶ 18.

In October 2004, after receiving a copy of Perfection Fence's complaint, Fiber Composites was troubled to learn that there might be a few isolated instances of "Perfection" still in existence on the profectiondecking.com website that had escaped Fiber Composites' editing process back in the summer of 2003. *Id.* ¶ 19. Fiber Composites immediately took steps to remove these residual uses. In addition, Fiber Composites disabled its old perfectiondecking.com domain name, believing there is no longer a need for it now that customers are no doubt familiar with its new product name. *Id.*

11

Although Perfection Fence would like the Court to believe that Fiber Composites' use of "Perfection" continues to this day, that is simply not the case. To the contrary, the facts clearly show that by September 2003 – more than 13 months ago – Fiber Composites affirmatively abandoned the "Perfection" name, and that it has no intention of ever using it again in the future. "Absent likelihood of future infringement, there can be none of the ill effects that an injunction seeks to prevent: no loss of future profits, no loss of goodwill or reputation." *See American Bd. of Psychiatry and Neurology, Inc. v. Johnson-Powell*, 129 F.3d at 4. In light of such total reformation by Fiber Composites, a preliminary injunction in respect of "Perfection" would be inappropriate.

### B. LIKELIHOOD OF SUCCESS ON THE MERITS WITH RESPECT TO "PROFECTION" IS DE MINIMUS BECAUSE PLAINTIFF IS NOT USING THE MARK IN COMMERCE AND BECAUSE LIKELIHOOD OF CONFUSION IS DI MINIMUS

The elements Perfection Fence must establish to show infringement are 1) that it uses, and thereby owns, a mark, and 2) that the defendant is using the same or a similar mark that is likely to confuse the public. *See DeCosta v. Viacom Intern., Inc.*, 981 F.2d 602, (1st Cir. 1992). Perfection Fence is not using the PERFECTION FENCE or PERFECTION marks in commerce in connection with "decking", therefore Perfection Fence cannot meet the initial threshold required to prevail in a trademark infringement action. Furthermore, there is no likelihood of confusion stemming from Fiber Composites' use of PROFECTION.

#### 1) The In Use Requirement

A mark is deemed used in commerce on goods when "it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents

associated with the goods or their sale, and the goods are sold or transported in commerce." 15 U.S.C. §1127. Perfection Fence does not use the PERFECTION FENCE or PERFECTION FENCE marks on or in connection with the vinyl decking it sells. The marks do not appear on displays associated with the vinyl decking (Brosius Decl. ¶ 9), price quotations for the vinyl decking (Clifford Decl. ¶ 6) or on labels applied to the vinyl decking that Perfection Fence ships to customers. *Id.* at ¶¶ 4-5.

Instead, the vinyl decking advertised and sold by Perfection Fence bears the trademark GORILLA DECK® a registered trademark owned by a third party, Homeland Vinyl Products, Inc. who apparently uses many different distributors to sell its product, of which Perfection Fence appears to be one. Clifford Decl. ¶¶ 4-6; Brosius Decl. ¶¶ 11-14.

Thus, Perfection Fence has not demonstrated that it owns a protectable trademark interest in the marks PERFECTION FENCE or PERFECTION for these marks for decking. Although Perfection Fence owns trademark Registration No. 2,826,042 for PERFECTION in respect of *inter alia* "decks", since it appears that Perfection Fence is not actually using the mark in respect of these goods, under Patent and Trademark precedent, Perfection Fence's registration is void for fraud. *See Medinol Ltd. V. NeuroVasx, Inc.*, 67 USPQ 2d 1205, 1209 (TTAB 2003) (finding fraud and grounds for cancellation where applicants submitted a verified statement of use asserting use on all of the recited goods, when applicant knew or should have known that the mark was actually used on only one of the recited goods).

### 2) The Likelihood of Confusion Factors

Likelihood of confusion is dispositive of federal trademark infringement. *See International Assn. of Machinists and Aerospace Workers, AFL-CIO v. Winship Green Nursing Center*, 103 F.3d 196, 200 (1st Cir. 1996). It is therefore dispositive of the claims for relief

13

under the present motion. The First Circuit has identified eight factors that must be weighed in order to determine whether a likelihood of confusion exists: (1) the strength of the plaintiff's mark; (2) the similarity of the marks; (3) the similarity of the goods; (4) the relationship between the parties' channels of trade; (5) the relationship between the parties' advertising; (6) the classes of prospective purchasers; (7) evidence of actual confusion; and (8) the defendant's intent in adopting its mark. *See I.P. Lund Trading ApS v. Kohler Co.*, 163 F.3d 27, 42–43 (1st Cir. 1998). "No one factor is necessarily determinative, but each must be considered." *Id.*

### 3) Applying the Likelihood of Confusion Factors

#### (i) Strength of the Plaintiff's Mark

Distinctiveness is one factor to be considered when determining a mark's relative strength or weakness. *See Boston Athletic Assn. v. Sullivan*, 867 F.2d 22, 32 (1st Cir. 1989). Other factors courts will consider in assessing a mark's strength include the length of time the mark has been used, its renown in the plaintiff's field of business, and the plaintiff's actions to promote the mark. *See Star Financial Services, Inc. v. AASTAR Mortg. Corp.*, 89 F.3d 5, 11 (1st Cir. 1996).

"[S]elf-laudatory, superlative words are inherently weak as trademarks." *Purolator, Inc. v. EFRA Distributors, Inc.*, 687 F.2d 554, 561–62 (1st Cir. 1982). "Marks that are merely laudatory and descriptive of the alleged merit of a product are also regarded as being descriptive," *Hoover Co. v. Royal Appliance Mfg. Co.*, 238 F.3d 1357, 1360 (Fed. Cir. 2001), and descriptive marks are considered weak marks. *See Boustany v. Boston Dental Group, Inc.*, 42 F. Supp. 2d 100, 111 (D. Mass. 1999). Any presumption of validity that may attach to a mark by virtue of the fact that it is registered is easily overcome if the mark is descriptive. *See Homemakers Home & Health Care Services, Inc. v. Chicago Home for Friendless*, 484 F.2d 625,