628 (7th Cir. 1973) ("[T]he fact that the mark consists of nothing more than one descriptive word, the presumption of validity may be easily overcome.").

Perfection Fence's PERFECTION and PERFECTION FENCE marks are both laudatory and descriptive: laudatory because they praise the products on which they are used, and descriptive because they describe a characteristic of the goods on which they are used. Courts and the PTO have consistently found marks similar to PERFECTION and PERFECTION FENCE to be lacking in distinctiveness. *See e.g., Helzberg v. Katz & Ogush*, 73 F.2d 626 (C.C.P.A. 1934) (finding that CERTIFIED-PERFECT DIAMONDS for jewelry is "merely descriptive of the character and quality of the goods on which it is used"); *First Sav. Bank, F.S.B. v. First Bank System, Inc.*, 101 F.3d 645, 654–55 (10th Cir. 1996) (noting that BEST, SUPERIOR, and PREFERRED are examples of merely descriptive terms); *Supreme Wine Co. v. American Distilling Co.*, 310 F.2d 888 (2d Cir. 1962) (finding that SUPREME for vodka was totally lacking in distinctiveness, originality and uniqueness); *Exquisite Form Industries, Inc. v. Exquisite Fabrics of London*, 378 F. Supp. 403 (S.D.N.Y. 1974) (finding that EXQUISITE for garments was laudatory and inherently weak).

In addition, Perfection Fence has not shown that it has used the PERFECTION and PERFECTION FENCE marks on the relevant goods – decking – for a length of time that would result in the marks being strong. Although Perfection Fence's registrations claim a "first use date" of 1993, there is no presumption that Perfection Fence has used the marks on decking since that time, since Perfection Fence was only obligated to state on its application for registration the earliest date it used the mark on any *one* of the goods listed in the application. See 37 C.F.R. §§2.34(a)(1)(v); 2.76(c) and 2.88(c).

15

Likewise, Perfection Fence's assertions in its affidavits that its marks are "well known" and "widely recognized" are entirely unsupported, and are of little help in assessing the strength of the marks. *See Lane Capital Management, Inc. v. Lane Capital Management, Inc.*, 15 F. Supp. 2d 389, 398 (S.D.N.Y. 1998) (finding that two affidavits stating that mark is "well known throughout a broad geographic area" were of little help in assessing strength of the mark). In fact, Perfection Fence has failed to provide any evidence that it affixes the PERFECTION and PERFECTION FENCE marks to its products at all, much less in such a way that the marks are capable of becoming strong indicators of source. Rather, Perfection Fence relies on conclusory assertions within its affidavits to support its contention that the marks have been used in such a way that they have acquired secondary meaning and are recognized as designating the source of Perfection Fence's goods. Such statements should be entitled to no weight. *See Robot Wars LLC v. Roski*, 51 F. Supp. 2d 491, 494 (S.D.N.Y. 1999) (denying plaintiff's motion for preliminary injunction, in part because "plaintiff has not proffered any material evidence whatever that plaintiff's trade dress is a strong indicator of the source of its product but relies instead on wholly conclusory assertions that are entitled to no weight").

Furthermore, Perfection Fence's claim that its marks enjoy special renown, due to Perfection Fence's purported exclusive use, is directly contradicted by the fact that there are at least 5 other companies who use "Perfection" in connection with fencing or decking products. *See* Brosius Decl. ¶¶ 2-7.

### (ii) Similarity of the Marks

The relevant standard for similarity is the total effect of the mark, considering sight, sound, and meaning. *See Calamari Fisheries, Inc. v. The Village Catch, Inc.*, 698 F. Supp. 994, 1009 (D. Mass. 1988). Further, "[s]imilarity of the marks must be considered in light of what

16

occurs in the marketplace, taking into account the circumstances surrounding the purchase of the goods or services." *Id.* (citations omitted).

***Sight***: In a vacuum, PERFECTION and PROFECTION do not bear more than a passing resemblance to one another. Of course, the words are not to be viewed in a vacuum, but rather, as the law of the First Circuit mandates, in the context in which they will be encountered in the marketplace. Because Perfection Fence is not using its marks in the marketplace in connection with its vinyl decking product, one cannot compare the context in which consumers will encounter the marks. Generally, consumers will encounter Fiber Composites' mark on *composite decking products* as:



and will presumably encounter Perfection Fence's mark on *fencing* products as:



Each mark's distinct design, and the addition of COMPOSITE DECKING to Fiber Composites' mark makes similarity between the marks slight. Moreover, any similarity between the marks is lessened significantly by the fact that the parties' products are very expensive, meaning that consumers will exercise considerable care in their selection. *See Pignons S.A. de*

17

*Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 489 (1st Cir. 1981). ("Courts have found less likelihood of confusion where goods are expensive and purchased after careful consideration").

**Sound.** The similarity of sound is about the same as that between "pro" and "purr," hardly overwhelming.

**Meaning.** There is no similarity of meaning. PERFECTION is a common word in wide use, with a recognized meaning. PROFECTION is a coined term, and consequently has no meaning other than the business it signifies to Fiber Composites.

Because Perfection Fence has not met its burden to show that the marks are so similar in total effect, "this factor weighs strongly . . . in favor of defendant", Fiber Composites. *See Stop & Shop Supermarket Co. v. Big Y Foods, Inc.*, 943 F. Supp. 120, 124 (D. Mass. 1996).

(iii)   **Similarity of the Goods**

Fiber Composites reiterates that there is no evidence that Perfection Fence actually uses its marks in commerce on the goods at issue, namely, decking products. Furthermore, Perfection Fence seeks to collapse all of its and Fiber Composites' goods into the same category of "decking materials," and this overbroad classification of the goods is meaningless when analyzing the similarity of the goods. *See Q Division Records, LLC v. Q Records and QVC, Inc.*, No. Civ. A. 99-10828-GAO, 2000 WL 294875, at *4 (D. Mass. Feb. 11, 2000). "Within the broad outlines of a product class, the differences between the particular products in question is often sufficient to render them dissimilar for the purposes of trademark analysis." *Id.*

While they may share a product class, there are notable differences between the parties' goods. Perfection Fence sells fencing, and Fiber Composites does not. Mancosh Decl. ¶ 2. Even the minor decking product Perfection Fence sells under the GORILLA DECK® mark is

18

different and sold in different channels than Fiber Composites' PROFECTION decking. *Id.* at ¶¶ 8, 11. The GORILLA DECK® decking is a hollow material made completely of PVC which is generally considered inferior to wood or wood composite decking, particularly for residential applications, because it lacks the solid quality feel of wood or composite boards, and because it tends to have an unnatural and unattractive commercial finish. *Id.* at ¶ 8. The wood composite decking sold by Fiber Composites, on the other hand, is made from a mixture of premium recycled wood and plastic. *Id.* at ¶ 2. Fiber Composites' composite decking has the appearance and feel of real wood, installs like real wood, has great durability, and is visually and functionally more attractive than hollow vinyl decking. *Id.* at ¶ 6.

The most telling difference between the goods is that composite decking, like the kind made by Fiber Composites, is preferred by consumers over vinyl decking by a margin of almost 9 to 1. *Id.* at ¶ 8.

### (iv) Relationship Between the Parties' Channels of Trade, Advertising, and Class of Prospective Purchasers

Perfection Fence devotes exactly two sentences in support of its claim that Perfection Fence and Fiber Composites share the same channels of trade: "Plaintiff ships goods to customers nationwide. Defendant, likewise, sells decking products all around the country." Plf. Brf. At 17. Perfection Fence likewise devotes two sentences in support of its claim that PERFECTION FENCE and Fiber Composites share the same class of prospective purchasers: "Plaintiff sells its products under the Marks to builders and developers as well as directly to homeowners. So does Defendant." *Id.* Apart from their origin as self-serving assertions from one of Perfection Fence's affiants, none of these claims are actually supported by any evidence.

In that respect, Perfection Fence has failed to meet its burden that Perfection Fence and Fiber Composites have similar channels of trade or purchasers.

In reality, the parties' channels of trade, customers and advertising are very dissimilar. Fiber Composites' PROFECTION product is sold *only* through Fiber Composites' licensee, LMC, to its exclusive dealers, a small highly select group of professional building materials dealers. Mancosh Decl. ¶ 11. Perfection Fence is not an LMC dealer, and LMC dealers do not appear to sell any Perfection Fence products. Similarly, Perfection Fence appears to only sell its products in its two Massachusetts showrooms, and does not appear to have third parties retail any of its products. Brosius Decl. ¶¶ 8-9.

The channels of trade part of the likelihood of confusion analysis "seeks to gauge the extent to which consumers might encounter the parties' products in the same context and therefore confuse them." *Anheuser-Busch, Inc. v. Caught-on-Bleu*, 288 F. Supp. 2d 105, 119 (D.N.H. 2003). Where "there are no converging market channels" courts are less likely to find likelihood of confusion. *Leathersmith of London, Ltd. v. Alleyn*, 695 F.2d 27, 30 (1st Cir. 1982). Here, there is no possibility that consumers will encounter Fiber Composites' goods and Perfection Fence's goods in the same context, because they simply do not travel in the same sphere.

The First Circuit's decision in *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482 is instructive here. In that case, the First Circuit found there was no likelihood of confusion, despite the fact that both parties' goods were single lens reflex cameras, were sold in overlapping channels of trade, and were advertised in some of the same magazines. *Id.* at 486–93. The court focused instead on the characteristics of each party's goods, and determined that it was their functional differences, as well as their difference in price, that made

20

them dissimilar goods. *Id.* at 487–89. In addition, despite the court finding that both parties' goods were sold in specialty camera shops and might appeal to some of the very same consumers, it declined to find likelihood of confusion on this basis, noting that one party's goods were generally sold on a much larger commercial scale and in greater sales volume than the other party's, and that the high price of the other party's goods meant consumers would purchase carefully. *Id.*

The facts before us here are even more favorable to Fiber Composites than they were to the defendant in *Pignons*. There is absolutely no overlap in the parties' channels of trade. Fiber Composites and Perfection Fence simply do not appear to sell their goods in any of the same places. *See* Hadley Decl. ¶¶ 2-5; Afful Decl. ¶¶ 2-3; and Roberts Decl. ¶¶ 2-4. Fiber Composites' composite decking products and Perfection Fence's vinyl decking products have many different features, and accordingly attract purchasers looking for different attributes. Mancosh Decl. ¶¶ 6-8. Apart from both operating a website and using radio ads, certainly not unique marketing tools in this day and age, there is no evidence that the parties share advertising venues, or ultimately target the same purchasers. "Where products have some overlap in channels of advertising and trade, but primarily occupy different channels, courts have not found likelihood of confusion based on this factor." *Hasbro, Inc. v. Clue Computing, Inc.*, 66 F. Supp. 2d 117, 123 (D. Mass. 1999). Finally, and most importantly, both parties' goods cost a great deal of money, and there is no reason to believe that purchasers will not chose them carefully. *See Pignons*, at 489; Mancosh Decl. ¶¶ 7-8.

### (v)   Actual Confusion

None of the examples of purported actual confusion that Perfection Fence points to in its Motion are probative of likelihood of confusion. Perfection Fence references two types of

purported actual confusion: the first involving one of its own employees listening to a radio advertisement[3]; and the second involving employees of two of LMC's dealers who in a telephone call with a Perfection Fence employee allegedly were unsure whether PROFECTION decking could originate from Perfection Fence. Plf. Brf. At 18-20.

First of all, Perfection Fence has failed to demonstrate that the alleged instances of actual confusion are the kind that threaten Perfection Fence's commercial interests. Although evidence of actual confusion is not limited to confusion among actual or potential purchasers, the confusion must at least exist in the mind of a "relevant person"—i.e., one whose confusion threatens the trademark owner's commercial interest in its mark. *See Beacon Mut. Ins. Co. v. OneBeacon Ins. Group*, 376 F.3d 8, 16 (1st Cir. 2004). Perfection Fence has not shown how "confusion" on the part of Perfection Fence's own employees could possibly threaten its commercial interests. This is because it is unable to do so. There is no logical scenario under which the confusion of a Perfection Fence employee could result in harm to Perfection Fence's commercial interests. Likewise, Perfection Fence does not offer any explanation how Fiber Composites' dealers, none of whom trade in Perfection Fence's products, could threaten its commercial interests, even if they were confused about the possible source of the PROFECTION goods, which in itself is doubtful.

Second, Perfection Fence points to only a few instances of alleged actual confusion. Little evidence of actual confusion weighs against finding likelihood of confusion. *See Aktiebolaget Electrolux v. Armatron Intern., Inc.*, 999 F.2d 1 (1st Cir. 1993) ("[W]eak evidence

---

[3] In one other instance it was a husband of one of Perfection Fence's employees who purchased Fiber's former "Perfection" product, allegedly believing it was from Perfection Fence. Since this incident involved "Perfection", which use Fiber has affirmatively abandoned, we do not discuss it.

of actual confusion weighs quite heavily against a finding of likelihood of confusion. While a showing of actual confusion is not required to establish infringement, an absence of actual confusion, or a negligible amount of it, between two products after a long period of coexistence on the market is highly probative in showing that little likelihood of confusion exists."). The instances of alleged confusion that Plaintiff points to fail to create even a "theoretical possibility of confusion":

> To demonstrate likelihood of confusion a markholder . . . must show more than the theoretical possibility of confusion. Just as one tree does not constitute a forest, an isolated instance of confusion does not prove probable confusion. To the contrary, the law has long demanded a showing that the allegedly infringing conduct carries with it a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care.

*International Ass'n of Machinists and Aerospace Workers, AFL-CIO v. Winship Green Nursing Center*, 103 F.3d 196, 200–01 (1st Cir. 1996). The parties' goods have coexisted for over a year. Including the time Fiber Composites used the "Perfection" name, this period of coexistence is over two years. Yet in this time Perfection Fence is unable to point to any instances of actual confusion, or any other facts, that show relevant persons have been or are likely to be confused.

Third, all of Perfection Fence's evidence of alleged actual confusion is unreliable because it originates with Perfection Fence. *See Citizens Financial Group, Inc. v. Citizens Nat. Bank of Evans City*, 383 F.3d 110, 122 (3d Cir. 2004) ("In general, 'actual confusion' evidence collected by employees of a party in a trademark action must be viewed with skepticism because it tends to be biased or self-serving.").

Thus, there is no cognizable actual confusion.

### (vi) Defendant's Intent in Adopting its Mark

Perfection Fence claims there is no plausible explanation for Fiber Composites' adoption of PROFECTION other than an attempt to ride on Perfection Fence's goodwill. Plf. Brf. At 21. On the contrary, Fiber Composites' explanation for its adoption of both the "Perfection" and PROFECTION names, described in detail in the Declaration of Douglas G. Mancosh ¶¶ 10, 13, shows that there was no attempt by Fiber Composites to ride on Perfection Fence's goodwill. In fact, at the time Fiber Composites selected its marks, it was not aware of any relevant goodwill belonging to Perfection Fence on which to ride. *Id.* at ¶ 4.

Perfection Fence deduces no actual evidence to show that Fiber Composites' intention in adopting its marks was dishonorable, and this belies any allegation to the contrary. *See Pignons,* 657 F.2d at 491 ("[D]espite their general, conclusory allegations [that defendant's actions were deliberate and done with full knowledge of plaintiffs' mark and registration], plaintiffs have not adduced a scintilla of evidence of palming off, intent to deceive, or any effort whatsoever by [defendant] to benefit from [plaintiffs'] reputation."). Consequently, intent is not a factor upon which Perfection Fence can rely.

### C. IRREPARABLE INJURY HAS NOT BEEN DEMONSTRATED AND IS UNLIKELY

The fact that there is no showing of any likelihood of confusion in this case makes it inescapable that, in the absence of an injunction, Perfection Fence will not be harmed, irreparably or otherwise. Without confusion, there is no harm.

Although Perfection Fence claims to have evidence of "immeasurable losses of business" due to Fiber Composites' use of its marks, it only points to its prior, highly questionable, examples of "actual confusion" in support. Plf. Brf. At 25. Since one of the two cited examples

involves Fiber Composites' use of the now abandoned "Perfection" name, half of Perfection Fence's evidence of "immeasurable losses" consequently disappears. Perfection Fence irreparable harm argument now hinges on us believing, at Perfection Fence's urging, that because one of its employees was allegedly confused by a radio ad for PROFECTION, this means there are countless others out in the marketplace who are similarly "confused." Perfection Fence cites no authority in support of its theory that assuming "immeasurable" customer confusion from an isolated incident involving an interested party is proper.

Perfection Fence also asserts that it will be irreparably harmed because Fiber Composites' goods are an inferior substitute for Perfection Fence's goods. Such assertions are totally unsupported. *See* Mancosh Decl. ¶¶ 6-8.

### D.   THE BALANCE OF HARDSHIPS FAVORS THE DEFENDANT

It is neither a simple nor an inexpensive undertaking to change a product name. *See* Mancosh Decl. ¶¶ 21-23. Fiber Composites has used the PROFECTION name for over a year now, and has built up considerable goodwill in the name, investing over $1 million on manufacturing costs and advertising expenditures. *Id.* ¶ 21. Fiber Composites will put at risk its $14 million a year business with LMC if it is forced to go through another disruptive name change. *Id.* ¶ 23. Thus, there is a significant, very wide-spread, interest in allowing Fiber Composites to continue its use of PROFECTION.

Impending hardship to Perfection Fence is, on the other hand, at most, uncertain, particularly where the evidence does not support a finding that Perfection Fence has lost any money or business by virtue of Fiber Composites' use of the PROFECTION mark. *See Bayshore Group Ltd. v. Bay Shore Seafood Brokers, Inc.*, 762 F. Supp. 404, 415–16 (D. Mass. 1991) ("[T]his court is unable to determine that the balance of hardships weighs decidedly in the

plaintiff's favor. There is no evidence in the record of actual or imminent injury to the plaintiff's business in terms of lost loss of revenues or clients as a result of defendant's activities."). Consequently, the balance of hardships clearly favors Fiber Composites.

### E. THE PUBLIC INTEREST FAVORS THE DEFENDANT

While the public interest favors the avoidance of confusion, where, as here, such confusion is unlikely, there is no basis for favoring the predictably false fears of the few at the expense of the best interests of the many.

### IV. CONCLUSION

For the reasons set forth above, the Court should deny Perfection Fence's Motion for Preliminary Injunction.

Dated: November 9, 2004

_____
John M. Skenyon (BBO # 465440)
Amy L. Brosius (BBO # 656521)
FISH & RICHARDSON P.C.
225 Franklin Street
Boston, MA 02110-2804
Tel: (617) 542-5070
Fax: (617) 542-8906

Attorneys for Defendant
Fiber Composites LLC

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing DEFENDANT'S MOTION IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND SUPPORTING MEMORANDUM was served by first class mail, postage prepaid, upon counsel of record on this 21st day of November, 2004:

Michael A. Albert, Esq.
Wolf, Greenfield & Sacks, P.C.
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA 02210

*/s/ John M. Skenyon*
John M. Skenyon