## UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

PERFECTION FENCE CORP.,

Plaintiff,

v.

FIBER COMPOSITES LLC,

Defendant.

Civil Action No. 04-12094 GAO

---

## DECLARATION OF DOUGLAS MANCOSH

I, Douglas G. Mancosh, hereby declare as follows:

1.      I am President of Fiber Composites, LLC ("Fiber Composites") and I have personal knowledge of the facts herein. I submit this declaration in support of Fiber Composites' Opposition to Plaintiff's, Perfection Fence Corp. ("Perfection Fence"), Motion for Preliminary Injunction.

2.      Fiber Composites is a part of the national deck-building industry, a $5 billion dollar a year national industry. The decking materials part of the deck-building industry, of which Fiber Composites is a part, has a $500-600 million annual market in New England alone. Fiber Composites manufactures wood composite decking, a high-tech combination of premium recycled wood, predominantly maple, and plastic in a proprietary resin formulation. Fiber Composites does not manufacture or sell fences or fence materials and has never been part of the fencing industry.

3.      Perfection Fence is a fence company. I have reviewed Perfection Fence's website, perfectionfence.com, and is appears that Perfection Fence makes and sells wood fences

and extruded vinyl fences. Perfection Fence also appears to offer a single discrete vinyl decking product made by Homeland Vinyl Products, Inc. ("Homeland"), which Perfection Fence sells under Homeland's GORILLA DECK® registered trademark.

4.    Perfection Fence's company name is not recognized in the deck-building industry as a source of decking goods and Perfection Fence's PERFECTION FENCE and PERFECTION trademarks are not recognized as a decking brand or decking category.

5.    Wood composites, like the kind sold by Fiber Composites, are the fastest-growing material used in the decking industry. In 2005, the market for composite decking will be ten times the size it was in 1992, with virtually all of the growth attributable to residential applications. By comparison, the market for vinyl decking, like the type sold by Perfection Fence, will have grown less than half that amount during the same period, with growth primarily attributable to commercial applications. Sales of wood composite decking products outstrip sales of vinyl decking products by a margin of 8 and a half to 1.

6.    The extreme popularity of wood composite decking, as compared to vinyl decking, is due in large measure to the fact that composites have the appearance and feel of real wood, and install like real wood, but have far greater durability and longevity compared with wood, and are visually and functionally more attractive than hollow vinyl decking. The addition of high-strength plastic makes each board lightweight, yet durable underfoot. Fiber Composites' composite decking outlasts traditional wood decking because it resists splitting, warping, rotting and splintering. It is not necessary to seal, stain or refinish Fiber Composites' composite decking. No special tools or hardware, apart from traditional woodworking tools, are needed to install it.

2

7.     Any suggestion that composite decking is inferior to vinyl decking is totally unsupportable. First of all, composite decking and vinyl decking do share some similarities. Both are approximately 2-3 times more expensive than traditional wood decking material. The cost of material needed to complete even a modest residential deck in either composite or vinyl decking runs into the many thousands of dollars. Accordingly, consumers of both composite decking and vinyl decking tend to be highly sophisticated discerning purchasers.

8.     At the same time, vinyl decking differs from composite decking in a number of important respects. For example, vinyl decking is hollow and as a result lacks the quality feel of solid wood composite boards. Vinyl decking also tends to have an unnatural and unattractive commercial finish. Vinyl decking tends to squeak underfoot. Vinyl decking is also about 30% more expensive than composite decking. The most striking difference between composite and vinyl decking is consumer preference. The superior attributes of composite wood decking make it the preferred material of professional builders in the decking industry. Composite decking, like the kind sold by Fiber Composites, is preferred over vinyl decking by an almost 9 to 1 margin. Many dealers who stock Fiber Composites' composite decking do not even stock vinyl decking.

9.     In August 2002, Fiber Composites decided to develop and manufacture a totally unique line of wood composite decking exclusively for Lumbermen's Merchandising Corporation ("LMC"), a professional lumber cooperative. The product that Fiber Composites developed for LMC was different from the existing products Fiber Composites was manufacturing.

10.     LMC and I consulted on names for the new product. The goal was to select a name that heralded the significance of Fiber Composites' new product as the "perfect board."

3

We considered the names "Perfection", "Pro Perfect", "Deck Perfect", and others, and finally settled on "Perfection", with "Pro Perfect" as a backup. An internet search conducted for "Perfection" and "Pro Perfect" in connection with decking products did not reveal any issues, so in August 2002, I had Fiber Composites' attorney file an application to register the names "Perfection" and "Pro Perfect" with the United States Patent and Trademark Office ("PTO").

11.    Fiber Composites entered into an exclusive license agreement with LMC for the "Perfection" product. Fiber Composites agreed to manufacture "Perfection" composite decking materials exclusively for LMC, who in turn made the product available exclusively to its member dealers, a select group of privately held professional building material dealers. Perfection Fence is not a member of LMC.

12.    LMC began selling "Perfection" decking products in October 2002. The mark appeared on the products in the form:



13.    In January 2003, we learned that the "Perfection" and "Pro Perfect" applications had both encountered impediments to registration at the PTO. The impediment in the "Perfection" application was the "Perfection Fence" registrations owned by the Perfection Fence. Rather than fight the PTO, I sat down again with LMC to rename our 3-month-old product. In reviewing our old list of potential names, we remarked that the name "Pro Perfect", in addition to heralding the "perfect board", also represented the pro-oriented nature of our product, signifying the "professional dealer" selling to the "professional builder." However, we were never

4

comfortable with a two-word mark. The two terms in "Pro Perfect" were merged together into
"PROFECTION."

14.    In April 2003, I had Fiber Composites' attorneys conduct a clearance search for
PROFECTION, and on June 30, 2003 they filed an application to register the mark
PROFECTION COMPOSITE DECKING. We maintained the circle around the R that we had
used previously, for the sake of consistency.

15.    In early summer 2003, Fiber Composites began migrating to the new
PROFECTION name. All product leaving Fiber Composites' plant that summer was labeled (in
the case if existing inventory, re-labeled) with new tags bearing the following:



16.    LMC sent letters to all of its dealers in August 2003 confirming that the new
name of the product was PROFECTION. Attached hereto as Exhibit A is a copy of one of those
letters. New product literature was also printed and distributed to LMC members. Attached
hereto as Exhibit B is a copy of one of the new pieces of product literature.

17.    In August 2003, Fiber Composites authorized LMC to register the domain name
profectiondecking.com to replace the perfectiondecking.com it had registered in November
2002. Although the old perfectiondecking.com website was retained (so people familiar with the
site would not encounter a dead link) it now resolved directly to profectiondecking.com site.

18.    Fiber Composites ceased using "Perfection" in summer of 2003 and completed its
rebranding effort that September. Dealer inventory bearing the old "Perfection" name was more
than likely completely sold off by the end of 2003, given the huge shipments of new

PROFECTION products sent by Fiber Composites to dealers during the last three months of that year. Fiber Composites has no intention of using the "Perfection" name in the future.

19.    In October 2004, more than a year after we had decided to stop using "Perfection" in favor of PROFECTION, and had taken steps to remove all traces of the old name from our packaging, printed material, and website, we received a copy of Perfection Fence's complaint in the present lawsuit. After reading the complaint, we were troubled to note that there might be a few isolated instances of use of "Perfection" remaining on our website. We immediately took steps to remove any remaining instances of use of "Perfection" in the metatags and HTML code of the profectiondecking.com website, and edited a single installation guide on the website that had inadvertently escaped our editing process back in summer 2003. We do not believe there are remaining instances of use of "Perfection" on the profectiondecking.com website or on documentation. In addition, we disabled the perfectiondecking.com domain so that it no longer resolves to our new website, believing that there is no need to maintain an Internet address under the old name now that customers are no doubt familiar with our new name by this time.

20.    Fiber Composites has used PROFECTION for over a year now, and I am aware of no incidents of confusion its use has caused in the marketplace. I am equally unaware any instances of confusion stemming from Fiber Composites' use of "Perfection" from October 2002 through September 2003.

21.    If Fiber Composites were enjoined from using the PROFECTION mark, the results would be disastrous. Contrary to what Perfection Fence suggests, changing a product name is no simple undertaking. Production and sales of the PROFECTION product has been much more extensive than it was during 2003 when it changed from "Perfection" after only three months of use. Fiber Composites would lose all of the manufacturing and advertising

expenditures outlaid to date related to the PROFECTION name – which run between $1 million
and $1.5 million dollars between Fiber Composites, LMC and its dealers. For example, Fiber
Composites would be forced to throw away tens of thousands of dollars in existing boxes, labels,
lumber wrappings, and printed product information for dealers. It would have to spend tens of
thousands of more dollars on new packaging, labels, and product information for dealers. Before
it could do that, however, Fiber Composites would have to incur substantial legal costs selecting
and clearing a new name, and filing corresponding trademark applications to protect the new
name. Contrary to what Perfection Fence asserts, Fiber Composites did not "switch" to
PROFECTION (or "Perfection") from the FIBERAIL and FIBERON trademarks. FIBERAIL
and FIBERON are trademarks that Fiber Composites uses, but on different products that are sold
to different customer bases. Fiber Composites has never used these marks in connection with the
unique composite decking product it developed exclusively for LMC.

22.    In addition to expenses associated with selecting a new name and creating new
product labels, Fiber Composites would face serious outlays in changing its current
PROFECTION inventory. Fiber Composites' existing inventory would have to be relabeled to
reflect the new name it selects. At any given time, Fiber Composites has 60 trucks of inventory
at its site with approximately 84,000 individual pieces of material. Fiber Composites also has by
estimate 100 truckloads of material at 240 dealer locations, comprising some 130,000 individual
pieces of material. Each piece bears two PROFECTION labels. Fiber Composites will incur
substantial labor costs to change the name on all of this inventory, because Fiber Composites will
have to re-label – by hand – almost a quarter of a million pieces of material. The time it will take
to complete the re-labeling will almost certainly mean associated delays in meeting customer
demand, and will almost certainly result in lost profits to Fiber Composites, because delays in

filling orders will be grounds for customers to cancel their delivery contracts with LMC, and for LMC in turn to cancel orders with Fiber Composites.

23.    The most serious issue facing Fiber Composites is that a name change would not be tolerated by LMC or its dealers, and put at risk Fiber Composites' $14 million a year business with LMC. The sheer volume of inventory already in the hands of LMC's dealers that would have to be recalled and relabeled if Fiber Composites were forced to change its name would almost certainly result in delays in meeting dealer orders. In consequence, many dealers will drop the PROFECTION product line to avoid dealing with the inventory recall and having to educate its employees and customers on another new product name. Fiber Composites' reputation with LMC and with LMC's dealers would be permanently damaged, and Fiber Composites' $14 million a year business with LMC would be placed in serious jeopardy.

24.    Perfection Fence's characterization of a longstanding "relationship" between Fiber Composites and Perfection Fence is wholly inaccurate. I have worked in the decking industry since 1983, when I became General Manager of BB&S Treated Lumber. In 1993, I became President of BB&S Treated Lumber. During the late 1980's, BB&S supplied lumber posts to Lawrence McCoy, a Worcester, MA wood wholesaler, who distributed products to, among others, fencing installers. One of McCoy's customers was Perfection Fence. On one occasion, I accompanied a McCoy salesman to his customer's place of business and met Charles Skulsky one of the principals of Perfection Fence. BB&S's business relationship with McCoy's terminated during the 1980's or early 1990's. Fiber Composites, which I founded in 1997 has never had any direct business dealings with Perfection Fence to my recollection.

25.    Apart from that isolated meeting in the late 1980's when I was with BB&S, up until 2004, I have had no interaction whatsoever with anyone from Perfection Fence. In January

8

2004, I attended the Northeastern Retail Lumber Association Lumber and Building Materials
Expo trade show on behalf of BB&S. BB&S's booth was promoting the FIBERAIL and
FIBERON products. The booth was not promoting the PROFECTION product because Fiber
Composites does not distribute PROFECTION to any entity but LMC, and LMC and its dealers
do their own advertising. Two men that I did not know approached BB&S's booth. I introduced
myself to them, and asked if I could answer any of their questions. One of them told me that he
recognized my name, and introduced himself as Charles Skulsky from Perfection Fence. I do not
recall what we discussed, although it was probably our respective businesses. They took some
FIBERAIL and FIBERON product material and left.

I declare under the pains and penalties of perjury under the laws of the United States of
America that the foregoing statements are true and correct to the best of my knowledge.

Dated: __11 \ 9__, 2004

Douglas G. Mancosh

20966140.3.doc

9