IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

PERFECTION FENCE CORP.,

                Plaintiff,

v.

FIBER COMPOSITES, LLC,

                Defendant.

CIVIL ACTION NO. 04-12094 GAO

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF
ITS MOTION FOR A PRELIMINARY INJUNCTION**

Michael A. Albert, BBO # 558566
malbert@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210
(617) 646.8000 Phone
(617) 646.8646 FAX


ATTORNEY FOR PLAINTIFF,
PERFECTION FENCE  CORP.

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.       INTRODUCTION ..................................................................................... 1

II.      ARGUMENT ........................................................................................... 1

    A.    Fiber Continues To Use The Mark PERFECTION, Contrary To Its Own
        Inexplicable Denials.............................................................................. 1

    B.    There Is No Heightened Standard For Preliminary Injunctive Relief In
        Trademark Cases................................................................................... 3

    C.    Perfection Uses The Mark PERFECTION As An Indicator Of Source For
        Decking Goods..................................................................................... 4

    D.    PERFECTION And PROFECTION Are Confusingly Similar. ................. 7

        1.    Similarity of the Marks ................................................................. 7

        2.    Similarity of the Goods ................................................................. 9

        3.    Channels of Trade, Advertising, and Class of Prospective
            Purchasers ................................................................................. 12

        4.    Evidence of Actual Confusion ...................................................... 14

        5.    Fiber's Intent in Adopting the Mark .............................................. 16

        6.    Strength of the Marks................................................................... 17

    E.    The Balance of Harms Favors Perfection ................................................. 19

III.     CONCLUSION...................................................................................... 20

## I.      INTRODUCTION

Plaintiff Perfection Fence Corp. respectfully requests leave to file this written reply, to address several inaccurate statements of law, as well as statements of fact that are flatly contradicted by the evidence, in Defendant Fiber Composites' "Motion [*sic*] in Opposition to Plaintiff's Motion for Preliminary Injunction and Supporting Memorandum." Fiber is still using the mark PERFECTION, and its trivially-modified variant PROFECTION, to sell decking, despite its claims that it has abandoned PERFECTION. Fiber is also wrong in denying that Perfection uses the mark PERFECTION for decking. Perfection uses that mark on the packaging for decking (as well as other related goods). Finally, Fiber ignores both the evidence of irreparable harm and, at least as importantly, the rule of law that irreparable harm is presumed in trademark cases once a likelihood of confusion has been shown. This reply memorandum and accompanying declarations address the most salient errors in Fiber's papers to show why Perfection's Motion should be granted.

## II.     ARGUMENT

### A.     Fiber Continues To Use The Mark PERFECTION, Contrary To Its Own Inexplicable Denials.

Defendant Fiber states repeatedly that it has "abandoned" its use of the mark PERFECTION (identical to Plaintiff's mark). Indeed, it dedicates an entire section of its argument to that proposition. See Fiber Opp. at 10 ("PLAINTIFF [*sic*][1] HAS CEASED USING "PERFECTION" SO PRELIMINARY INJUNCTION AS TO THIS MARK IS NOT APPROPRIATE"). Fiber repeats the claim throughout its opposition. See Fiber

---

[1] As the text of this section shows, Fiber is claiming that it (the defendant) has ceased using PERFECTION.

Opp. at 2 ("[T]his mark has not been in use for over a year"); <u>id.</u> at 8 ("Fiber Composites

voluntarily abandoned [PERFECTION] over a year ago"); <u>id.</u> at 17 ("Fiber Composites

ceased using the name [PERFECTION] in September *2003*"); <u>id.</u> at 17 ("The evidence

shows quite plainly that Fiber Composites has completely abandoned its use of

'Perfection'"); <u>id.</u> at 18 ("Fiber Composites affirmatively abandoned the "Perfection"

name, and … has no intention of ever using it again in the future").

　　　　Fiber's claim that it has ceased using PERFECTION is contradicted by the facts.

Indeed, it is difficult to understand how Fiber considered it appropriate to make this

repeated representation to the Court in the face of evidence presented in Perfection's

exhibits which Fiber has not even attempted to rebut with any contrary factual showing.

　　　　As Perfection pointed out in its opening memorandum and declarations, at the

time this suit was filed, Fiber was using the mark PERFECTION as many as fourteen

times in the source code of a single page of its website, and on the title bar of every page.

(<u>See</u> Pl.'s Mem. at 9; First Skulsky Decl. ¶¶ 23, 24, Exs. O, P.)  Even more remarkable in

light of Fiber's representations is that, *at the time Fiber filed its opposition*—and

continuing through the day this Reply Memorandum is being filed—the mark

PERFECTION continues to appear in the metatags of *every* page of Fiber's website, and

ten times on one page, including in the title bar.[2]  (McManus Decl. ¶¶ 3-4, Exs. A, B.)

　　　　Fiber's ongoing use of PERFECTION is not limited to its website.  As detailed in

Perfection's initial papers, several of Fiber's own dealers—at least eight of which

---

[2] Metatags are a common way to associate a website with a particular term for search engines.  It is thus unsurprising that the page of Fiber's website with ten instances of Perfection's mark PERFECTION is one of the top results in a Google search for "perfection decking."  (McManus Decl. ¶ 10, Ex. D).  <u>See</u> <u>Brookfield Communications v. West Coast Entertainment Corp.</u>, 174 F.3d 1036 (9th Cir.1999) (granting preliminary injunction where defendant used plaintiff's mark in metatags).

Plaintiff is aware, after an analysis of New England-area dealers alone—continue to call Fiber's product PERFECTION.[3]  (See Pl.'s Mem. at 14, 19; Coleman Decl. ¶¶ 7, 8.) Fiber's papers do not even deny, let alone disprove, these facts.

Because Fiber cannot credibly argue that the use of PERFECTION on decking is not infringing, it resorts to a plainly false statement of the facts.  Fiber must have known that these facts were false when it presented them to the Court—after all, it controls the website in question, it is familiar with its own dealers' usage, and its attention was specifically drawn to these facts in Perfection's opening papers.

**B.    There Is No Heightened Standard For Preliminary Injunctive Relief In Trademark Cases.**

Fiber suggests that the standard for a preliminary injunction set out in Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 15 (1st Cir. 1996) has been heightened in trademark cases to require a "*substantial* likelihood of success on the merits" and a "*significant* risk of irreparable harm."  (Fiber Opp. at 10.)  Even if this were the standard, Perfection has met it.  But in any event, there is no such heightened standard, as this Court recently acknowledged, following First Circuit precedent.  See New England Cord Blood Bank, Inc. v. Alpha Cord, Inc., 2004 WL 222357 (D. Mass. 2004) (O'Toole, J.) (factors to consider include "the movant's probability of success on the merits" and "the likelihood of irreparable harm absent preliminary injunction relief"), quoting New Comm Wireless v. Sprintcom, Inc., 287 F.3d 1, 8-9 (1st Cir. 2002).  See also Q Division Records, LLC v. Q Records, 2000 WL 294875 (D. Mass. 2000)

---

[3] It is unclear whether Fiber itself admitted in its opposition that LMC dealers continue to sell decking under the name PERFECTION or was simply confused between PERFECTION and PROFECTION. See Fiber. Opp. at 7, last line.

(O'Toole, J.) (no requirement for "substantial" likelihood or "significant" risk).

Moreover, Fiber does nothing to refute the black letter law that irreparable harm is presumed in trademark cases once a substantial likelihood of success has been established. See, e.g. McCarthy on Trademarks and Unfair Competition § 30:47 (section entitled "Irreparable injury flows from showing of likely confusion"). Once a likelihood of confusion is established, it is unnecessary to demonstrate a "significant" risk, or any risk, of irreparable harm, since it is presumed as a matter of law.

### C. Perfection Uses The Mark PERFECTION As An Indicator Of Source For Decking Goods.

Fiber's representation that Plaintiff does not use the mark PERFECTION for decking is contradicted by the evidence, including Fiber's own evidence. Fiber relies on the Declaration of Scott Clifford, who apparently ordered decking from Perfection Fence Corp. after this suit was filed. Like all decking shipped by Perfection, that decking arrived in a package marked with the PERFECTION trademarks. (Skulsky Supp. Decl. ¶ 3.) Whether the mark is on the actual boards, as opposed to their packaging, is irrelevant. All that is required for trademark use is that the mark be used "in connection with" the item, see Calamari Fisheries, Inc. v. The Village Catch, Inc., 698 F. Supp. 994, 1000 (D. Mass. 1988). There is no requirement that the mark be physically affixed to the item itself—it can be on packaging, or even on other associated materials, and that is just as much a trademark use as if it were on the goods themselves.[4] See, e.g., Beer Nuts, Inc. v. Clover Club Foods Co., 711 F.2d 934, 938 (10th Cir. 1983).

Perfection also advertises its decking and deck railing extensively under the

---

[4] A good example is COKE®, one of the world's most famous trademarks. It would be difficult to imagine trying to affix this mark to the product rather than its packaging.

- 4 -

PERFECTION mark, appears in several yellow pages listings under "Deck Builders,"
uses the keywords "decking" and "deck railing" to attract traffic to its website, and lists
its decking and railing materials in the American Fence Association Buyer's Guide.
(Skulsky Supp. Decl. ¶¶ 4-6, Exs. A, B, C.)  The PERFECTION Marks are also posted on
a stainless steel sign affixed to the product when Perfection does the installation.  (Id. ¶
7).  In fact, nearly every Perfection advertisement in recent years includes deck railing
products and prominently features the PERFECTION Marks.[5]  (Id. ¶ 8, Ex. D.)  The
additional use of the GORILLA DECK sticker on the packaging does not affect
Perfection's rights in PERFECTION as used in connection with decking, as "[t]here is no
doubt that one product can bear more than one protectable trademark."[6]  McCarthy § 7:2;
see also Tanel Corp. v. Reebok Intern., Ltd., 774 F. Supp. 49, 53 (D. Mass. 1990) ("[I]t is
settled that two trademarks can always be used together without invalidating either
mark.")

Indeed, even if Perfection did not use its mark on its goods, packaging, or
advertising, it would still own protectable rights because PERFECTION is a trade name.
See McCarthy § 9:3 ("Defendant's use of the professional or corporate name of plaintiff
as a trademark on goods may be characterized as trademark infringement.").  Regardless
of whether individual pieces of Perfection's decking are labeled with the PERFECTION
mark, all of Perfection's decking is sold under the PERFECTION trade name, which
serves as the indicator of source and quality for all of its products.  See id. ("A 'trade

---

[5] Fiber's claim that Perfection's registration is void for fraud is accordingly without merit.
[6] In fact, consumers purchasing Perfection's decking do not ordinarily see the GORILLA DECK mark at
all.  The sticker is occasionally left on the packaging when a customer orders an entire pallet of one size of
decking by freight shipment, a rare event.  (Skulsky Supp. Aff. ¶ 9).

name' symbolizes the reputation of a business as a whole, while a 'trademark' may be used to identify and distinguish the various products and services sold by that business.").

Perfection's decking materials are sold in its PERFECTION showroom, in its PERFECTION catalog, and on its websites which include the domain names <perfectionfence.com> and <perfection-fence.com>.  Like many companies, Perfection uses a number of subsidiary marks on specific products in addition to its house mark PERFECTION.  Fiber's apparent position that such usage undermines the strength of Perfection's house mark PERFECTION, which is the mark used consistently across Perfection's entire product line, is unsupported and contrary to law.  See McCarthy § 7:5.  In every Perfection catalog, PERFECTION is included prominently on the same page as decking materials, even if the particular product is also labeled as Gorilla Deck® (Brosius Decl. Ex. H at 87), ForeverVinyl™ (Id. at 74), or Praesidium™ (Id. at 86).

Under Fiber's reasoning, General Motors could not stop a competitor from using the mark GENERAL MOTORS on a car, because General Motors uses other marks (BUICK, CADILLAC, CHEVROLET, and PONTIAC) for its cars.  This absurd result is contrary to established trademark law that protects a company's trade name as well as its trademarks.  See, e.g., West Des Moines State Bank v. Hawkeye Bancorp., 722 F.2d 411, 413 (8th Cir. 1983) ("[t]rade names (business names) are under modern law accorded the same protection as trademarks"); Walt-West Enterprises, Inc. v. Gannett Co., 695 F.2d 1050, 1054 n. 6 (7th Cir. 1982) (using "the terms trademark, service mark and trade name interchangeably in conformity with contemporary judicial parlance"); Blacks in Government v. National Ass'n of Blacks Within Government, 601 F. Supp. 225, 227 (D.D.C. 1983) ("the law protecting trademark infringement is essentially the same as that

protecting commercial and corporate trade names"). In any event, as noted above,

Perfection <u>does</u> use the PERFECTION mark on and in connection with its products,

packaging, and advertising. It is both Plaintiff's trade name and its trademark.

     **D.**     **PERFECTION And PROFECTION Are Confusingly Similar.**

Fiber has failed to rebut Perfection's showing that PERFECTION and

PROFECTION are confusingly similar. Perfection will briefly address Fiber's arguments

on each of the factors applied by the First Circuit for likelihood of confusion, <u>see</u>

<u>Volkswagenwerk Aktiengesellschaft v. Wheeler</u>, 814 F.2d 812, 817 (1st Cir. 1987).

     1.     <u>Similarity of the Marks</u>

Outside the context of litigation, Fiber itself admitted that the difference between

PERFECTION and PROFECTION is "minor," stating: "[W]e are announcing a minor

change in our compoite [*sic*] decking trade name." (Mancosh Decl. Ex. A.) Its litigation-

driven attempt to unring that bell fails, as the "total effect of the mark, considering sight,

sound, and meaning," <u>Copy Cop, Inc. v. Task Printing, Inc.</u>, 908 F.Supp. 37, 44 (D.

Mass. 1995), only further shows how confusingly similar PROFECTION is to

PERFECTION.

**Sight.** Fiber first argues that "in a vacuum" PERFECTION and PROFECTION

do not bear more than a "passing resemblance" to one another. (Fiber Opp. at 17.)

Although it is unclear what it would mean to compare the marks "in a vacuum," it defies

common sense to suggest that marks which share nine out of ten letters are not similar in

appearance. Fiber then erroneously limits its comparison of the marks to their stylized

forms, ignoring the fact that Perfection has obtained trademark protection for

PERFECTION and PERFECTION FENCE in block letter form, which is the broadest

protection, covering any and all styles in which the marks may be used. <u>See Exxon Corp.</u>

v. National Foodline Corp., 579 F.2d 1244, 1247 (C.C.P.A. 1978). Even comparing the marks in their stylized forms, they still look similar—in fact, Fiber's president admits that the circle that Fiber used in PERFECTION (similar to the circle in Plaintiff's mark) was preserved in PROFECTION "for the sake of consistency." (Mancosh Decl. ¶ 14.)

**Sound.** Fiber urges the Court to make a classic error in trademark law by focusing only on the differences between the marks and ignoring those parts of the marks which are the same, as well as the overall effect of the mark. "The similarity of the marks factor requires consideration of the 'total effect of the designation, rather than a comparison of the individual features.'" Volkswagenwerk, 814 F.2d at 817. Picking out the one slight difference (between "pro" and "per"), Fiber claims the sounds are different. But a consumer hearing PERFECTION and PROFECTION will hear little if any difference. In trademark analysis, "similarities weigh more heavily than differences." Calamari Fisheries, 698 F. Supp. at 1009. See also McCarthy § 23:41 ("To the average buyer, the points of similarity are more important than minor points of difference.") The sound of the marks, as a whole, is nearly indistinguishable.

**Meaning**. Fiber argues in its brief that there is "no similarity of meaning" between PROFECTION and PERFECTION because PROFECTION "has no meaning other than the business it signifies to Fiber Composites." (Fiber Opp. at 18.) To the contrary, Fiber itself admits that PROFECTION was selected with a specific meaning in mind. According to Fiber's president, once Fiber learned that it would not be able to register PERFECTION, it decided to merge the two word mark "Pro Perfect," signifying "the perfect board" and the "pro-oriented nature of [Fiber's] product" to form PROFECTION. (Mancosh Decl. ¶ 13.) In other words, Fiber chose the PROFECTION

- 8 -

mark, at least in part, because it included in its meaning the concept of "perfection"—

precisely the same as the meaning of Plaintiff's mark.[7]

###### 2.    Similarity of the Goods

Fiber makes little headway in its effort to deny that its decking and Perfection's

decking are both the same type of goods, or at least are "related goods," which is all they

need to be for infringement law to apply.  See Levi Strauss & Co. v. Blue Bell, Inc., 778

F.2d 1352, 1363 (9th Cir. 1985).  Fiber seeks to distract from this obvious point by

identifying some other goods Perfection also sells, such as other outdoor landscape

products besides decking.  But it does not matter what else either company makes; both

make decking and deck railing.  Likewise, differences in the parties' construction

materials do not alter the fact that they are the same class of goods.

First, even if one were to consider the non-decking goods sold by Perfection,

these too are closely "related" to decking in the trademark sense.  The principle that a

mark's protection extends to "related goods" is well established in trademark law.  See,

e.g., Valmor Products Co. v. Standard Products Corp., 464 F.2d 200 (1st Cir. 1972)

("personal care items" and "beauty aids" are related goods); American Express Co. v.

---

[7] Fiber concludes in a footnote that the USPTO "did not consider Fiber's … mark and Perfection Fence's … marks confusingly similar to one another, and recently approved Fiber's application for publication." (Fiber Opp. at 4.)  No such conclusion can be drawn from the mere publication of Fiber's application for opposition.  Numerous courts have recognized that an examining attorney's determinations are merely "preliminary."  See, e.g., Cairns v. Franklin Mint Co., 24 F. Supp. 2d 1013, 1043 n. 21 (C.D. Cal. 1998); S Indus. v. Stone Age Equip., 12 F. Supp. 2d 796, 801 (N.D. Ill. 1998).  The very nature of the ex parte examination process forces examiners to base their conclusions on a record less developed than that enjoyed by the TTAB in inter partes proceedings, much less by judges in full-fledged civil actions.  Hence the right for parties to oppose the registration before it issues.  Indeed, Perfection has done just that.  See Timex Corp. v. AAI. Fostergrant, Inc., 2000 WL 1576396, at *12 & n. 12 (D. Conn. Sept. 14, 2000) ("[T]he Court has reached its conclusion based on a more complete evidentiary record than was before the trademark examiner, having heard from both parties."); Prime Media, Inc. v. Primedia, Inc., 33 F.Supp.2d 932, 938 (D. Kan. 1998) (explaining that a PTO decision was of "little probative value" because the other party had not had an opportunity to respond).

American Express Limousine Service, Ltd., 772 F. Supp. 729 (E.D.N.Y. 1991) (mark on travel services infringed by use of mark on limousine service); Communications Satellite Corp. v. Comcet, Inc., 429 F.2d 1245 (4th Cir. 1970) (mark on communications services infringed by use of mark on computers).  Perfection's non-decking goods are related to decking, in that all of Perfection's goods are used as outdoor landscaping materials.

Fiber repeatedly argues that decking is only a small part of Perfection's product line.  First, this argument is irrelevant to any element of the applicable test.  Second, it is not true.  Deck railing sold under the PERFECTION mark constitutes a major source of revenue for Perfection.  (Skulsky Supp. Decl. ¶ 10; Brosius Decl. H at 74-86, showing twelve pages of Perfection's catalog featuring deck railing).  Deck railing is also a major component of Fiber's product line.  (See First Skulsky Decl. Ex. J).  Other goods are similar to decking but unattached to a house, e.g., pergolas and gazebos.

The evidence is clear that fencing and decking are part of the same industry.  For example, the program for the upcoming American Fencing Association trade show FENCETECH '05 shows that there will be a "Deck and Railing Pavilion," as well as several seminars related to decking and railing together.  (Skulsky Supp. Decl. ¶ 11, Ex. E.)  Past FENCETECH trade show meetings have similarly featured decking materials.  (Id. ¶ 12.)  In fact, Perfection has exhibited its own PERFECTION decking and deck railing materials at past FENCETECH trade shows.  (Id. Ex. F.)  World Fence News, the leading industry newsletter, frequently includes articles and advertisements for decking.  (Id. ¶ 13, Ex. G.)  The Fencer's Almanac, a leading industry publication in which Perfection advertises, promotes itself as a source of decking materials, and includes numerous advertisements for decking.  (Id. ¶ 14, Ex. H.)  Decking articles also appear in

other fencing industry publications, such as Architects, Specifiers & Landscape

Architects Fence Product Guide.  (Id. ¶ 15, Ex. I.)  Industry analysts refer to the "fencing

and decking industry."  For example, in one report, Fiber is profiled as a "leading U.S.

Fence and Deck Product Manufacturer."  (Id. ¶ 16, Ex. J.)

Second, it is legally irrelevant whether Perfection carries goods *in addition to*

decking, since its trademark rights for PERFECTION and PERFECTION FENCE cover

its entire product line, including decking.  There is no basis for Fiber's theory that a mark

should receive less protection as used in connection with one product because the

trademark owner also uses the mark on other products.  Plaintiffs with a wide range of

products are just as entitled to protect their marks as those with a single product.

Third, Fiber's own admissions demonstrate that its composite wood decking

products compete directly with Perfection's vinyl decking products, and thus its attempt

to argue that the products should be considered dissimilar based on the choice of

construction material must fail.  Fiber claims that "[t]he most telling difference" between

Perfection's decking and Fiber's decking is that "composite decking, like the kind made

by Fiber Composites, is preferred by consumers over vinyl decking by a margin of almost

9 to 1."  (Fiber Opp. at 19.)  Without embarking on a discussion of why consumers prefer

one kind of decking over another, Fiber's "most telling difference" is in fact the most

compelling argument that composite wood and vinyl decking materials are direct

competitors, since, according to Fiber's own statement, consumers must decide between

the two materials when purchasing decking.[8]  Again, goods need not be identical to fall

within the same, let alone a "related," class of goods for purposes of trademark analysis.

See Tamko Roofing Products, Inc. v. Ideal Roofing Co., Ltd., 282 F.3d 23, 27 (1st Cir.

2002) (affirming preliminary injunction where plaintiff manufactured and sold asphalt

roofing products and defendant manufactured metal roofing and siding products).

3.    Channels of Trade, Advertising, and Class of Prospective
      Purchasers

Fiber seems to be contending that the "channels of trade" factor is only present if

the defendant's product is sold side-by-side in the same store with the plaintiff's product.

This is not the law.  Courts commonly find this factor favors the plaintiff when there is

geographic overlap between the areas where the products are being sold even if the

precise retail outlets differ.  See Calamari Fisheries, 698 F. Supp. at 1010-1011 (finding

overlap in the parties' channels of trade where plaintiff's and defendant's restaurants

were located in neighboring towns).  The Federal Circuit has rejected the exact argument

made by Fiber.  Century 21 Real Estate Corp. v. Century Life of America, 970 F.2d 874

(Fed. Cir. 1992) ("This court does not limit channels of trade to identical stores or

agents.").  See also Glow Industries, Inc. v. Lopez, 273 F.Supp.2d 1095, 1125 (C.D. Cal.

2003) ("[T]he parties' outlets and customer bases need not be identical; only some degree

of overlap need be present before the factor favors a finding of likelihood of confusion.").

The fact that the products do not actually appear side-by-side may actually

---

[8] Perfection disputes Fiber's characterization of Perfection's decking as "inferior," (Fiber Opp. at 19), and indeed believes the opposite to be true.  (First Skulsky Decl. ¶ 18.)  Even if Fiber's characterization were accurate, however, Perfection should still prevail.  See El Greco Leather Prods. Co. v. Shoe World, Inc., 806 F.2d 392, 395 (2d Cir. 1986) (stating that "actual quality of the goods is irrelevant; it is the control of quality that a trademark holder is entitled to maintain"); McCarthy § 3:4 (explaining that trademark law embodies consumers' expectations of consistent quality "whether that quality is high, low or mediocre").

increase the likelihood of confusion.  Sun-Fun Products, Inc. v. Suntan Research & Development, Inc., 656 F.2d 186, 192 (5th Cir. 1981) (where parties' products were sold at different stores, "the inability to compare the products side by side and observe the precise differences in appearance may increase the likelihood of confusion"); Louisiana World Exposition, Inc. v. Logue, 746 F.2d 1033, 1041 (5th Cir. 1984) (same).

Fiber's products do appear side-by-side with Perfection's products.  For example, both Fiber and Perfection will be exhibitors at the 2005 International Builder's Show in Florida. (Skulsky Supp. Decl. ¶ 17, Ex. K.)  The fact that both Fiber and Perfection exhibit at the same trade show is strong evidence of overlapping channels of trade. Equine Technologies, Inc. v. Equitechnology, Inc., 68 F.3d 542, 546 (1st Cir. 1995).

In its opening papers, Perfection noted that both Perfection and Fiber sell decking products nationwide.  Fiber suggests these "self-serving assertions" are not "actually supported by any evidence." (Fiber Opp. at 19.)  Fiber is wrong.  It is well established that a sworn declaration made under the pains and penalties of perjury is indeed admissible evidence for a preliminary injunction.  See e.g., Trak, Inc. v. Benner Ski KG, 475 F. Supp. 1076 (D. Mass. 1979) (granting preliminary injunction where affidavits were sufficient to establish secondary meaning); Pic Design Corp. v. Bearing Specialty Co., 436 F.2d 804 (1st Cir. 1971) (same).  Strikingly, Fiber does not refute this assertion.

Fiber misunderstands the "class of prospective purchasers" analysis, moreover, when it concludes that the relevant purchasers are LMC dealers.  While LMC dealers are one step along the distribution chain, the end consumer is the ultimate purchaser of both parties' products.  The ultimate purchaser of Fiber's and Perfection's products are the same: home owners and professional contractors looking to build decks.  The law is clear

- 13 -

that infringement should be enjoined where there is a risk of end-user confusion, even if distributors or store owners might not be confused.  See McCarthy § 23:5.  Moreover, as discussed below, even Fiber's own distributors are confused.

4.    Evidence of Actual Confusion

Fiber chooses not to discuss one of Perfection's most salient examples of actual confusion, because the incident involved the mark PERFECTION, which Fiber claims (inaccurately) to have "affirmatively abandoned."  (Fiber Opp. at 22.)  After stating that it will ignore this incident—in which a consumer purchased Fiber's goods believing them to be Perfection's—Fiber then claims that Perfection is unable to point to "any" instances of actual confusion over the time it has been using PERFECTION and PROFECTION. (Id. at 23.)  As discussed at length above, Fiber has not "affirmatively abandoned" PERFECTION and continues to use the mark to attract traffic to its website.  Moreover, several of its own dealers still call its product PERFECTION.  (Coleman Decl. ¶¶ 3-8). The incident of confusion Fiber deliberately ignores is both relevant and striking.

Fiber also argues that Perfection fails to explain how the actual confusion of its own dealers could threaten Perfection's commercial interests.  (Fiber Opp. at 22.)  The answer is simple: if Fiber's dealers can't distinguish between PROFECTION and PERFECTION, they will tell customers looking for Perfection's products that they carry them when in fact they do not, and will sell Fiber's product in place of authentic Perfection product.  Moreover, if even the dealers are confused, it is highly unlikely that the ultimate purchasers of the decking materials are going to be able to tell the difference between the marks.  See Bishop v. Hanenburg, 226 U.S.P.Q. 362, 364 (Wash. App. 1985) ("Not only is a supplier a member of the public, but if a supplier is confused by similar businesses with identical names, the consuming public is likely to be similarly

- 14 -

confused.")  Likewise, the actual confusion of Perfection's own sales representative upon hearing Fiber's advertisement suggests a likelihood of consumer confusion, since Perfection's sales representative is familiar with Perfection's product line and advertising and thus among the least likely to be confused.

In the time since this Motion was filed, Perfection has become aware of additional actual consumer confusion.  Perfection's product manager received a call from a potential customer asking about the difference between "Perfection decking" and a competitor's product.  (Coleman Supp. Decl. ¶ 3.)  The customer was certain that Perfection's product was made from wood composite.  When Perfection informed the customer that Perfection's decking was vinyl, the customer stated that he had found the composite wood decking on the "Perfection decking" website.  (Id. ¶¶ 4-5.)  Evidently the customer had confused Perfection with Fiber, since Fiber's website is the one that features wood composite decking.  (Id. ¶¶ 6-7).  Perfection's control of its reputation is thus threatened because customers are associating Fiber's composite wood decking with Perfection.

Fiber's reliance on the cases dealing with a long period of coexistence without evidence of actual confusion is misplaced.  It is unclear when Fiber's PROFECTION decking and promotional materials first entered the market, although it appears from Fiber's submission that this occurred sometime in the fall of 2003, at most a year before Perfection brought suit.  (Mancosh Decl. Ex. A) ("Marketing materials produced for the fall for the program will include" the change from PERFECTION to PROFECTION, dated August 15, 2003).  This is not sufficient time to establish any presumption of lack of actual confusion.  See Frank Brunckhorst Co. v. Heileman Brewing Co., 875 F. Supp. 966 (E.D.N.Y. 1994) (no presumption against likelihood of confusion where products

have only coexisted for seven months).  More to the point, there have in fact been several

instances of actual confusion as discussed above.

5.     Fiber's Intent in Adopting the Mark

Fiber concedes that it adopted the mark PROFECTION because of its similarity to

PERFECTION.  (Mancosh Decl. ¶ 10, Ex. A.)  Fiber concedes that it had notice of

Perfection's mark.  (Id. ¶ 13; Answer ¶ 24.)  Fiber contends that Perfection "deduces [*sic*]

no actual evidence to show Fiber's intention in adopting its marks was dishonorable."

(Fiber Opp. at 24.)  The intent factor, however, does not require a trademark holder to

read the infringer's mind.  Instead, courts find the intent factor favors the plaintiff when

the infringer knew of the plaintiff's mark and deliberately adopted a similar one.  See

Dreyfus Fund, Inc. v. Royal Bank of Canada, 525 F. Supp. 1108, 1121 (D.C.N.Y. 1981)

("A wrongful intent appears easy to infer where the defendant knew of the plaintiff's

mark, had freedom to choose any mark, and 'just happened' to choose a mark

confusingly similar to plaintiff's mark"); Beer Nuts v. Clover Club Foods Co., 805 F.2d

920, 927 (10th Cir. 1986) (The "deliberate adoption of a similar mark may lead to an

inference of intent to pass off goods as those of another which in turn supports a finding

of likelihood of confusion"), accord EMC Corp. v. Hewlett-Packard Co., 59 F. Supp. 2d

147, 151 (D. Mass. 1999); Yankee Spirits, Inc. v. Gasbarro, 1998 WL 428092, *12 (D.

Mass. 1998) ("Most cases hold that knowledge of the senior appropriator's use of the

mark is sufficient to defeat a claim of good faith").  Here, where Defendant's own words

admit the similarity of the mark and the deliberate choice of such mark because of the

similarity (Mancosh Decl. ¶ 13, Ex. A.), the conclusion is all the clearer.

Furthermore, continued use of a mark after the PTO has refused registration based

upon the senior user's own registration indicates bad faith.  National Customer

- 16 -

Engineering v. Lockheed Martin Corp., 43 U.S.P.Q.2d 1036, 1039 (C.D. Cal. 1997) ("Despite the rejection of [defendants'] trademark application, Defendants nonetheless adopted [the mark]…[T]he Court concludes this factor weighs heavily in Plaintiff's favor"); Kiki Undies Corp. v. Promenade Hosiery Mills, Inc., 411 F.2d 1097, 1101 (2d Cir. 1969). Fiber did exactly this when it continued to use PERFECTION after receiving the PTO rejection on January 27, 2003. (First Skulsky Decl. Ex. G).

6.    Strength of the Marks

A suggestive mark is strong. Equine Technologies, Inc., 68 F.3d at 544. As Perfection explained in its initial memorandum, the Marks PERFECTION and PERFECTION FENCE are suggestive, rather than descriptive. Indeed, the Trademark Office agreed—it registered the Marks without requiring a showing that they had achieved "secondary meaning." See Tanel Corp., 774 F. Supp. at 53 ("The Trademark Office's decision to register plaintiff's mark reflects a conclusion that the mark is not descriptive, and that conclusion provides the mark with a presumption of validity.")

Even if the Marks were descriptive, they have acquired substantial secondary meaning, and thus trademark strength, as discussed below. Sands, Taylor & Wood Co. v. Quaker Oats Co., 978 F.2d 947, 954 (7th Cir. 1992) (noting "the well-established doctrine that a descriptive term is protectable as a trademark to the extent it has developed secondary meaning"). Perfection has used the Marks on decking at least since 1998, and on deck railing at least since 1995. (Skulsky Supp. Decl. ¶ 18, Exs. L, M.) This is more than enough time to establish a strong mark. See Equine Technologies, 68 F.3d at 547 (finding a mark strong after four years of use).

Fiber's claim that Perfection's assertions of renown are "entirely unsupported" is false. Perfection proffered evidence of extensive advertising (see First Skulsky Decl. ¶

- 17 -

9), which is evidence of a strong mark.  See Keds Corp. v. Renee Int'l Trading Corp., 888

F.2d 215, 222 (1st Cir. 1989).  Moreover, Perfection has been featured several times in

World Fence News, a leading industry newsletter, including on the cover.  (Skulsky

Supp. Decl. ¶ 19, Ex. N.)  Perfection has also been featured in Boston Design Magazine

(Id. ¶ 20, Ex. O), and on multiple home improvement TV shows (Id. ¶ 21).

     Fiber lists five companies that it found in an online yellow pages search that

supposedly incorporate the word "Perfection" into their company name.  None of these

companies diminish the strength of Perfection's Marks, either because they do not in fact

use that mark or because they do not sell decking or fencing products.

     First, Fiber has not established that any of these companies actually use

PERFECTION as a trademark for any goods or services, let alone for the decking

products at issue here.  The Connecticut-based company referred to by Fiber actually

operates under the name "The Connecticut Fencemen, Inc.," and does not appear to

advertise under any name incorporating the term PERFECTION.  (Skulsky Supp. Decl. ¶

22).  Moreover, the Connecticut Fencemen does not sell decking.  (McManus Decl. ¶ 5.)

     Second, Perfection is entitled to pursue infringers in any order it wishes, and need

not sue all potential infringers simultaneously to protect its rights.  U.S. Jaycees v. San

Francisco Junior Chamber of Commerce, 354 F.Supp. 61, 73-74 (N.D. Cal. 1972) (noting

that "numerous cases" have held that "the existence of infringers other than the defendant

was irrelevant to a determination of whether the defendant should be enjoined from

continuing in its infringement of plaintiffs' trademarks and in its unfair competition").  Of

the five companies listed by Fiber, three have no website and appear to be entirely local.

(McManus Decl. ¶ 6.)  Fiber is the largest entity that uses a mark confusingly similar to

Perfection's and appears to be the only company that competes with Perfection nationwide, thus inflicting the most damage to Perfection's reputation.

The only company other than the Connecticut Fencemen which does have a website, Perfection Landscape, Inc. of Oregon, does not mention decking, fencing, or any other products similar to Plaintiff's anywhere on the website. (McManus Decl. ¶ 7, Ex. C.) Instead, Perfection Landscape, Inc. apparently provides landscaping services and products such as bark dust, cedar chips and slates. Id.

Furthermore, contrary to the declaration accompanying Fiber's opposition, Perfection Landscape, Inc. does not answer the phone as "Perfection Decks" (Brosius Decl. ¶ 7), but rather as "Perfection Landscape." (McManus Decl. ¶ 7.) Also contrary to Fiber's declaration, Perfection Landscape, Inc. does not sell decking products at all. (Id.)

Fiber's declaration also appears to be in error regarding "Perfection Decks." (Brosius Decl. ¶ 5.) The answering machine at the number given for Perfection Decks answers with the name "Scott," not "Perfection Decks." (McManus Decl. ¶ 8.) Moreover, the person answering the phone at that number stated that he is not doing business as Perfection Decks anymore, and at no time did he sell decking. (Id.)

The other two companies that incorporate Perfection into their name referenced in Fiber's declaration, one in Kasota, Minnesota, and the other in Pasadena, California, did not answer the phone at all when called on four separate occasions over the course of two business days during normal business hours in their respective time zones. (McManus Decl. ¶ 9). Fiber does not even claim that either of those companies sells decking.

     **E.**    **The Balance of Harms Favors Perfection**

Fiber offers no evidence in support of its conclusory assertion that its business with its dealers will be put at risk if it is forced to go through "another disruptive name

change." Fiber's own papers suggest that (a) it already made one name change without any such severe consequences,[9] and (b) its dealers are aware that another name change might be necessary. When Fiber announced that it had selected a new mark because its PERFECTION application was rejected, it noted that registration of PROFECTION was "not guaranteed until reviewed at the federal level." (Mancosh Decl. Ex. A.)

In any case, any hardship to Fiber at this stage is of its own making: it had the opportunity to adopt a noninfringing mark when its application for PERFECTION was rejected, and instead chose to adopt a nearly identical mark by changing only one letter.

## III.  CONCLUSION

Plaintiff requests that the Court grant Perfection's Motion and preliminarily enjoin Fiber from further confusing the marketplace with its infringing trademarks.

Respectfully submitted,

PERFECTION FENCE CORP.

By its counsel,

Dated: December 8, 2004                   /s/ Michael A. Albert
                                        Michael A. Albert, BBO # 558566
                                        malbert@wolfgreenfield.com
                                        WOLF, GREENFIELD & SACKS, P.C.
                                        600 Atlantic Avenue
                                        Boston, Massachusetts 02210
                                        (617) 646.8000 Phone
                                        (617) 646.8646 FAX

---

[9] Fiber attempts to distinguish the earlier name change (from PERFECTION to PROFECTION) by claiming that "[w]hile Fiber Composites has changed its name once before, it was after only three months of using the 'Perfection' name." (Fiber Opp. at 5). But Fiber's President states that Fiber did not start distributing products under PROFECTION until nearly a year after it had begun using PERFECTION (Mancosh Decl. ¶¶ 10, 12, 16) and that its dealers continued to sell decking under the PERFECTION mark for several more months (Id. ¶ 18). Moreover, Fiber admitted in its answer that it sold goods under the PERFECTION mark for nearly a year. (Answer ¶ 15).

- 20 -