UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-12094-GAO

PERFECTION FENCE CORPORATION,
Plaintiff,

v.

FIBER COMPOSITES LLC,
Defendant.

MEMORANDUM AND ORDER
February 10, 2005

O'TOOLE, D.J.

In this action, Perfection Fence Corporation ("Perfection Fence") alleges that Fiber Composites, LLC ("Fiber Composites") has engaged in trademark infringement and unfair competition in violation of section 43(a) of the Lanham Act, the common law, and chapters 93A and 110B of the Massachusetts General Laws.  Perfection Fence also asserts causes of action for counterfeiting and cyberpiracy under 15 U.S.C. §§ 1116(d) and 1125(d), respectively.  Perfection Fence filed a motion for a preliminary injunction seeking to enjoin Fiber Composites from using the trademarks "PERFECTION" and "PROFECTION" or any other trademark that is confusingly similar to Perfection Fence's federally registered trademarks "PERFECTION" and "PERFECTION FENCE."  After careful review of the briefs and supporting affidavits, and after oral argument, I conclude that the motion ought to be granted.

I.    **Factual Background**

When Perfection Fence incorporated in 1993 it began using the marks "PERFECTION" and "PERFECTION FENCE" in connection with the nationwide sale of fencing products to homeowners

and building professionals.  The company has also used its "PERFECTION FENCE" mark to sell

deck railings since at least 1995 and decking since at least 1998.  Perfection Fence has registered

a number of domain names to promote its business, including "perfectionfence.com" and "perfection-

fence.com."  On May 14, 2002, Perfection Fence obtained two federal trademark registrations for

"PERFECTION FENCE" both in block letter form and as a stylized mark which includes a circle with

a ribbon around the "P."  According to the registrations, the goods and services covered by these

marks are: "non-metal, wood or plastic fencing, namely, guard rails, boards, posts, gates, fence

sections, hardware for fencing, namely, screws and fasteners."  Skulsky Decl. ¶ 6, Exs. A, B.  In July

2002, Perfection Fence filed a federal trademark application for the mark "PERFECTION" in block

letter form.  On March 23, 2004, the Patent and Trademark Office ("PTO") issued a registration for

the mark "PERFECTION" to Perfection Fence for "[n]on-metallic outdoor building materials,

namely, fence railings, deck railings, gazebo railings, fencing, pillar posts, decks, deck rails, gazebos

lamp posts, mail box posts, sign frames and trellises, namely, arbors and pergolas."  Id. ¶ 7, Ex. C.

The defendant, Fiber Composites, manufactures and sells wood composite decking and deck

railings but not fences or fence materials.  In August 2002, Fiber Composites began developing a new

line of composite decking to sell to building materials dealers through the Lumbermen's

Merchandising Corporation ("LMC"), a professional lumber cooperative.  Fiber Composites selected

the name "PERFECTION" for its new composite decking products, with a circle around the "R."

Fiber Composites then applied for federal trademark protection, authorized LMC to register the

domain name "perfectiondecking.com", and in October 2002, began selling its composite decking

under the "PERFECTION" name.

In January 2003, the PTO refused Fiber Composites' application for the mark "PERFECTION" in light of Perfection Fence's registrations for "PERFECTION FENCE." The Examiner found the marks "virtually identical," the goods "highly related," and the similarities among the marks and the goods "so great as to create a likelihood of confusion among consumers." Id., Ex. G. The Examiner also informed Fiber Composites of Perfection Fence's then pending application for the mark "PERFECTION." In the summer of 2003, Fiber Composites began changing the name of its composite decking products from "PERFECTION" to "PROFECTION" (after considering but rejecting the proposed mark "PRO PERFECT"), but continued to sell products under the "PERFECTION" name until at least September 2003.

Presently, Fiber Composites maintains that all of its "PERFECTION" inventory has likely been sold off and that it has no intention of using the "PERFECTION" name for its products. It has also ceased using the domain name "perfectiondecking.com." Fiber Composites has endeavored to remove any remaining use of the term "Perfection" in the metatags and HTML code of its "profectiondecking.com" website. The company does, however, continue to sell its composite decking products under the name "PROFECTION," with a circle around the "R," including on the website "profectiondecking.com."

## II.    Discussion

Perfection Fence alleges that Fiber Composites' use of the "PERFECTION" mark, as well as the confusingly similar "PROFECTION" mark, in the nationwide sale of synthetic decking materials is likely to cause confusion, to cause mistake, or to deceive members of the public as to the source, sponsorship, or affiliation of Perfection Fence with Fiber Composites, and the origin,

sponsorship, or approval of Perfection Fence's products with those of Fiber Composites. See 15 U.S.C. § 1125(a)(1)(A). Fiber Composites responds that it has ceased using the "PERFECTION" mark for its products and that the sale of its decking products under the "PROFECTION" mark is not confusingly similar to the fencing products Perfection Fence sells under its "PERFECTION FENCE" mark. Fiber Composites also contends that Perfection Fence does not use its "PERFECTION FENCE" mark on decking products and does not use the one word "PERFECTION" mark at all.

A plaintiff seeking a preliminary injunction in a trademark case must demonstrate (1) a likelihood of success on the merits; (2) that it will suffer irreparable injury if an injunction is not granted; (3) that any such injury outweighs any harm which granting the injunction would cause the defendant; and (4) that the injunction will not adversely affect the public interest. Equine Techs., Inc. v. Equitechnology, Inc., 68 F.3d 542, 544 (1st Cir. 1995).

Likelihood of confusion is an essential element of the plaintiff's federal and state trademark infringement and unfair competition claims. Pignons S.A. de Mecanique de Precision v. Polaroid Corp., 657 F.2d 482, 486-87 (1st Cir. 1981). The First Circuit has identified eight factors to be weighed in determining likelihood of confusion: "(1) the similarity of the marks; (2) the similarity of the goods; (3) the relationship between the parties' channels of trade; (4) the relationship between the parties' advertising; (5) the classes of prospective purchasers; (6) evidence of actual confusion; (7) the defendant's intent in adopting the mark; and (8) the strength of the plaintiff's mark." I.P. Lund Trading v. Kohler Co., 163 F.3d 27, 43 (1st Cir. 1998). The factors are non-exclusive, and the particular facts of a case may render certain factors irrelevant or difficult to apply. IAM v. Winship Green Nursing Ctr., 103 F.3d 196, 203 (1st Cir. 1996).

(1)    Similarity of the marks.

Fiber Composites' use of the plaintiff's identical "PERFECTION" mark for its decking products has apparently ceased, but it continues to use the name "PROFECTION." The similarity in sight and sound of "PERFECTION" and "PROFECTION" is strong. Of the ten letters in each of the two words, nine are the same, and the words are barely distinguishable when spoken. The First Circuit reached a similar conclusion when it compared the mark "Simmonds" with the mark "Simmons:"

> Perhaps on the tongues of linguists or precisionists, variations of articulation could be perceived. However, to the ear of the average person the two names would pass as one. Similarly, we believe that few but the discriminating of eye would, upon visual examination, readily perceive the subtle spelling gradation obtaining between the two names. In sum, on its face, we believe that the name Simmonds is inherently capable of generating confusing similarity with the name Simmons.

Baker v. Simmons Co., 307 F.2d 458, 465 (1st Cir. 1962).

The two words also have similar meaning because "PROFECTION" is contrived as a merger of "Pro" (short for professional) and "Perfect." Mancosh Decl. ¶ 13. Both "PERFECTION" and "PROFECTION" are meant to covey a standard of quality in the products to which they pertain–i.e. that they are perfect or made to perfection. Because the marks are similar in total effect, this factor weighs in the plaintiff's favor.

(2)    Similarity of the goods.

Although Perfection Fence does not manufacture its own synthetic decking, it uses its "PERFECTION FENCE" mark to sell a vinyl decking product made by Homeland Vinyl Products, Inc. under Homeland's "GORILLA DECK" registered trademark. Fiber Composites' own decking product is a mixture of recycled wood and plastic. Putting aside the parties' unsupported, self-serving statements about customer preference, both products are similar in that they are decking

products constructed from synthetic materials designed to eliminate or improve on problems experienced with solid wood decking, such as splitting, warping, and cupping.

Fiber Composites' argument that it is a decking company while Perfection Fence is a fencing company, though generally true, is similarly unavailing because fencing and decking products are sufficiently related so that the consuming public is likely to believe that decking products sold under the "PROFECTION" mark are somehow sponsored by, affiliated with, or connected with Perfection Fence and the "PERFECTION FENCE" mark. See Baker, 307 F.2d at 462 ("[T]he protection which the law gives the owner of a trade-mark is not confined to the goods upon which it is, or has been, used by the owner of it but extends to products which would be reasonably thought by the buying public to come from the same source if sold under the same mark.") (internal quotations marks omitted); 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 24:24 (4th ed. 2004). The record shows that fencing and decking products are often advertised, exhibited, and sold by the same companies. For example, the "yellow pages" of various phone books in the greater Boston area list the following companies under the category "Deck Builders:" Perfection Fence, Fencecraft, Dr. Deckfence, Landmark Fence & Deck Company, and Premier Fence LLC. Supp. Skulsky Decl., Ex. A. In addition, fence, deck and railing professionals, including both Perfection Fence and Fiber Composites, exhibit their products at the same trade shows. Id., Exs. F, K. Fencing industry publications also publish articles and advertisements related to decking, id., Exs. G, H, I, and fencing and decking are sometimes considered one industry. Id., Ex. J.

(3) - (5) Channels of trade; Advertising; Classes of prospective purchasers.

The court will examine these three factors together. IAM, 103 F.3d at 204. The parties target some of the same classes of prospective purchasers through different channels of trade. Perfection Fence sells its decking products to builders, developers, and homeowners nationwide.

Fiber Composites sells its composite decking through a professional lumber cooperative to building materials dealers nationwide, who in turn sell to the same end users as Perfection Fence. Though both parties' goods are expensive and purchased after careful consideration, this does not eliminate the likelihood of confusion among prospective purchasers.

The parties both advertise their decking products on the Internet and on radio stations serving the same geographic area. They also present their products at the same trade shows, although it is unclear what specific fencing and/or decking products they exhibit at the shows.

The plaintiff uses its "PERFECTION FENCE" mark to promote its fencing, deck railings and Gorilla Deck decking through websites, catalogs, the yellow pages, and sales quotations. Perfection Fence has also listed itself as a supplier of decking and railings in trade show programs and guides and fencing industry publications using the name "Perfection Building Products Corporation." There is no evidence that Perfection Fence uses its one word "PERFECTION" mark *alone* to promote or sell decking products.

The registration for the plaintiff's "PERFECTION" mark specifies use for deck railings, decks, and deck rails, but the registration for its "PERFECTION FENCE" mark only specifies use for fencing–not decking goods and services. Even so, because fencing and decking products are related, Perfection Fence's trademark remedies are not limited to the specific fencing goods listed in the registration for the "PERFECTION FENCE" mark. See E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imports, Inc., 756 F.2d 1525, 1530 (11th Cir. 1985); c.f. Astra Pharm. Prods., Inc. v. Beckman Instruments, Inc., 718 F.2d 1201, 1208 (1st Cir. 1983). Also, as discussed above, the relatedness of the products is likely to lead the consuming public to believe that "PROFECTION" composite decking products are somehow sponsored by, affiliated with, or connected with Perfection Fence and the "PERFECTION FENCE" mark.

7

(6)    Evidence of actual confusion.

The evidence of actual confusion proffered by Perfection Fence is not strong. First, the mistaken belief of a Perfection Fence sales representative as to the origin of Fiber Composites' radio advertisement for "Perfection Decking and Railing" is not necessarily indicative of actual consumer confusion, although one could infer that potential customers would also be confused by the advertisement.

Second, even though Fiber Composites' past use of the "PERFECTION" mark resulted in some actual consumer confusion when a customer purchased Fiber Composites' "PERFECTION Composite Decking" believing it to be Perfection Fence's product, the steps Fiber Composites has taken to eliminate the use of the "PERFECTION" mark in the promotion and sale of its composite decking has likely reduced the possibility of confusion.

The stronger indications of actual confusion, though based on hearsay, are (i) the confusion exhibited by Fiber Composites' own dealers about whether they carry "PERFECTION" or "PROFECTION" decking products, see Coleman Decl. ¶¶ 7-8, and (ii) the recent phone call to Perfection Fence from a potential customer inquiring about composite wood decking (Fiber Composites' product) on the defendant's "Perfection decking" website. Supp. Coleman Decl. ¶¶ 3-7.

(7)    Defendant's intent in adopting the mark.

There is no persuasive evidence at this stage that Fiber Composites intended to ride on Perfection Fence's goodwill or create confusion when it began using the "PERFECTION" mark in August 2002. However, after learning in January 2003 of Perfection Fence's trademark registrations for "PERFECTION FENCE" and pending application for "PERFECTION," Fiber Composites continued to sell decking products under the "PERFECTION" name until at least September 2003, and it subsequently adopted the very similar "PROFECTION" mark.

8

(8)    Strength of the mark.

The "PERFECTION FENCE" and "PERFECTION" marks are laudatory and descriptive because they portray a certain quality or characteristic about the goods to which they refer, Equine Techs., 68 F.3d at 544, that is, the fencing and decking products covered by the marks are perfect or made to perfection. But 15 U.S.C. § 1115(a) entitles Perfection Fence to a presumption that its registered trademarks are inherently distinctive, as opposed to merely descriptive. Id. at 545. Perfection Fence has also presented some favorable evidence regarding the length of time the marks have been used, the strength of the marks in its field of business, and the action it has taken in promoting the marks, tending to suggest that the marks have acquired secondary meaning. See Skulsky Decl. ¶¶ 5, 8, 9; Supp. Skulsky Decl. ¶¶ 3, 4, 6, 7, 8, 10, 12, 14, 17, 18, 19, 20, 21. All in all, the marks appear to be moderately strong.

## III.    Conclusion

After considering all the relevant factors as they apply to the circumstances of this case, I find a likelihood of confusion as to the parties' affiliation, connection, or association, or the origin, sponsorship or approval of the parties' goods. Because Perfection Fence has demonstrated a likelihood of success on its trademark claims, it will likely suffer irreparable harm absent an injunction, and the harm to Fiber Composites from an injunction is outweighed by both the plaintiff's and the public's interest in enforcing the protections of the trademark laws. Accordingly, the plaintiff's motion for a preliminary injunction is GRANTED.

Fiber Composites and its officers, directors, agents, servants, employees, attorneys, representatives, affiliates, subsidiaries, licensees, successors, assigns, and all those acting for them or on their behalf, or acting in concert or privity with them, are hereby ENJOINED, pending final

judgment in this action, from using the trademarks "PERFECTION" and "PROFECTION" and any other confusingly similar trademark in United States commerce.

It is further ORDERED that Perfection Fence shall post an injunction bond in cash or by a corporate surety qualifying under Local Rule 67.1 in the sum of $100,000 for payment of such costs and damages as may be incurred by Fiber Composites in the event that it has been wrongfully enjoined.  Such bond shall be filed with the Clerk of the Court forthwith.

It is SO ORDERED.


February 10, 2005                               \s\ George A. O'Toole, Jr.
DATE                                                    DISTRICT JUDGE